## Cadillac Oil and Gas Company v. Harrison, et al.

(Decided October 31, 1922.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Leases.—Where the owners of a large boundary of land granted an oil and gas lease thereon, containing a provision that certain drilling should be done within a time lim-

ited in the lease contract, and thereafter the land is subdivided into small farms and sold to individuals, the lease upon the whole tract continues if within the time limited in the lease contract the drilling was commenced and prosecuted upon any part of the large boundary, and the holder of the small boundary taken from the large boundary cannot complain that the drilling was not done upon his boundary, and he is bound by the terms of the lease even as the man on whose portion the wells are drilled.

2. Mines and Minerals—Leases—Estoppel.—Where an oil and gas lease has expired by its terms, and the lessee brings drillers and drilling machinery upon the lease and without objection from the landowner proceeds to drill a well or wells, the landowner will be estopped to claim that the lease had expired; and so also if after the oil lease has expired by its terms a new well is commenced upon the lease and the landowner, without objection, takes employment from the drillers and aids in the drilling of the wells, he is estopped to claim that the lease had expired.

HARPER & DENTON for appellant.

A. B. YORK and F. M. GOAD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

On October 31, 1917, R. L. Sears, Herbert Gillock and Leslie Gillock, owners of a boundary of land in Allen county containing about 1,000 acres, leased the same by a single contract of that date to J. E. Wright and J. Y. Kuykendall. The lands were described in the lease as follows: "Said lands being that certain tract of land situate in the —— of ———, county of Allen, state of Kentucky, bounded and described as follows to-wit: (here follows a description by adjoining lands), containing 1,000 acres, more or less." The lease contains the following provision: "To have and to hold the same unto the party of the second part, its successors and assigns, for eighteen months from date hereof and so long as oil and gas are produced from said premises in paying quantities." The consideration was one dollar ($1.00) paid to the grantors and the reservation of one-eighth of all the oil taken and saved from the premises, and certain sums to be paid for gas wells in case gas was found in paying quantities and was marketed off the premises. After the making of the oil lease the lands were divided and sold in tracts. Appellee Harrison and wife acquired about 100 acres. They received their deed January 5, 1919, while the lease was yet in force. Before

appellees purchased a part of the leased boundary several wells had been drilled on the lease but owing to the absence of a pipe line and other means of conveyance the oil had not been marketed. The Harrisons moved on and took possession of their tract in January, 1920. At that time a well had been drilled within their boundary but no oil had been produced though a showing of oil was found. That winter another well was drilled upon appellees' tract without objection from them. The following summer two more wells were drilled and a third one started. Appellee, James W. Harrison, was employed in the work of drilling two of these wells. On the first well he received six dollars per day as tool dresser. The drilling machine was moved to a new location on the premises and a fifth well started, but, owing to a controversy which arose between the drillers and the holders of the lease, the drillers ceased work on the fifth well and moved their machinery from the lease, although appellants were then insisting that the drillers proceed with the work according to the contract between appellant company and the drillers for the completion of the fifth well. During the drilling of these several wells appellees made no objection whatever to the work of development. About the middle of September, when the drilling machine was moved from the lands of appellees, the appellant company commenced to try to find another driller and to make other arrangements for the sinking of the other wells on the premises, but were unable to do so until about the end of December, when another drilling rig was moved on to the premises and begun to drill well number five. Appellees objected to this last well-drilling machine being moved upon their premises and contended that the lease had expired. On the 6th of January following, and while the work of drilling was proceeding, appellees commenced this action against appellant praying a cancellation of the lease under which appellants were proceeding, upon the grounds that the lease cast a cloud upon the title of appellees and further praying that appellant be enjoined and restrained from trespassing on the lands. In the petition it is alleged that by the terms of the lease it would expire in eighteen months from its date which would be in the month of May, 1919, and that the same did expire on or about said date for the following reasons: "Plaintiffs allege that there is not now and never has been, during the life of said lease

contract, oil or gas, or either of them, 'produced upon the leased premises in paying quantities,' and in truth and in fact there has never been no production of any kind or character had upon any part of said 1,000 acres.''

Appellant answered and admitted that it was claiming the right to drill and develop the property under the lease contract and averred ''that there is production on this land and that all of said wells have been drilled since plaintiffs purchased this land and while they were living on said land they stood by peaceably and without objection and watched defendant spend thousands of dollars drilling on said land and made no objection whatever, and that the said well was drilled only about two months before this suit was brought, and drilling would have continued except for differences which arose between defendant and the contractors which necessitated some litigation, and that when the last well was drilled that plaintiff knew it and raised no objection to said drilling; that the plaintiff, James Harrison, worked for the defendant, or for the contractor, did some hauling and some other work in assisting to drill the said wells for which he was duly paid; that the plaintiff never objected to defendant's lease and made no claim that same had expired until after what was thought to be a large producing well on the Buckhannon land adjoining this land, when plaintiff had large offers made for a lease on the land if he could get defendant's lease cancelled, and that prior to the filing of the said suit the defendant had made a contract with the drillers to go on said land and further develop same, and that on account of the claims, statements and threats plaintiff's said contractor refused to go on said land, and that prior to the filing of said suit it did procure another contractor who is now drilling on said land and further developing the same.''

Issue being joined and evidence taken the case was submitted to the chancellor who decreed a cancellation of the lease in so far as it affected the leasehold owned by appellees. The oil company appeals.

Appellant relies upon an estoppel arising through the acquiesence of appellees in and to the work of development done by appellant in drilling wells on the lease, and further upon the fact that the lease upon the full 1,000 acres was continued in full force and effect by the drilling of other wells in accordance with the terms of contract upon other parts of the lease outside of the tract

claimed by appellees. There is authority for the contention of appellants that where several persons owning different tracts of adjoining land or jointly own a large tract give a joint lease or leases, the whole boundary under one contract in which it is provided that a well or wells shall be drilled upon the lease within a time specified in order to perpetuate the lease, the drilling of a well or wells anywhere within the large boundary is a compliance with the terms of the lease and binds each of the owners and their grantees, provided they knew, either actually or constructively, of the lease contract at the time and before they purchased the land, even though no well is drilled upon parts of the land included in the lease and which is claimed by persons not directly interested in the land on which the wells are drilled. Thornton on Oil & Gas, vol. 1, p. 148; Harness v. Eastern Oil Co., 49 W. Va. 232; Northwestern Ohio Company v. Ullery, 68 Ohio State 259. If, as contended by appellant, oil wells were drilled within the limits of the 1,000 acre lease in conformity to the terms of the lease contract, it was such a performance as continues the lease in force on appellee Harrison's tract, which was an integral part of the whole boundary. Passing this contention we think the evidence sufficiently shows that appellees were estopped to claim a forfeiture of the lease by their acquiescence in the development of their lands by appellant. Let it be granted that the lease had expired before appellant entered on appellees' lands for the purpose of drilling wells and developing the property according to the terms of the lease, yet it cannot be denied that if such entry was made by appellant in good faith for development purposes, believing that appellees would not claim a forfeiture under the terms of the lease, and appellees knew of the entry, and either by acquiescence or by affirmative acts allowed or aided appellant in the sinking of the wells and development of the property for oil purposes at great expense, appellees will not now be heard to say that they did not consent to the development work by appellant nor will they be allowed to claim or have a forfeiture of the lease, because to do so would be contrary to the fundamental principles of equitable estoppel. The doctrine of equitable estoppel is generally applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which

he had acquiesced or of which he has accepted any benefit. 10 R. C. L., p. 694.

It seems clear, therefore, that appellant company had a right to have its machinery and employes on the premises in the middle of September, 1920, at the time it is insisted the contractors moved the drilling machinery away. This right continued in appellant until it returned and began the drilling of the fifth well of which complaint is made, unless it abandoned the lease, and this depends upon the facts and circumstances. The general rule seems to be that a lessee who has entered upon and partly explored a lease and has moved off or temporarily suspended operation, may re-enter within a reasonable time after he ceased operation and defeat the lessor's proceeding to cancel the lease by proving that he did not intend to abandon the premises. The relinquishment must be actual and the abandonment intentional. These are questions of fact. Thornton on Oil & Gas, vol. 2, p. 1206; Henne v. South Pen. Oil Co., 52 West Va. 192; Bay State Petroleum Co. v. Penn Lubricating Co., 121 Ky. 637. In the latter case Williams, the lessee, entered on the lease and did some development work; he then went away and remained some years. On his return the lessor objected to his entry on the lease and protested against his further work of development but Williams proceeded. After working for some time and finding no oil in paying quantities, Williams again went away but this time he tore down his structures and took all his property away. We held that this was an abandonment, proven especially by the fact that appellee intended to quit the premises, and this intention was manifested by his razing his derricks and removing all his property from the lease. We held, however, in the case with respect to the first cessation of development work of the lease by Williams, that although the lease had expired by its terms the acquiescence of the landowner in Williams' work on the lease after his return was such as to work an estoppel against the landowner to claim a cancellation of the lease on the ground of abandonment, saying: "But when appellee (Williams) again abandoned the property he (the landlord) was not estopped to deny the right to return a second time." The evidence in this case clearly shows that appellant did not intend to abandon the premises or to cease development of the lease at the time the well drillers moved the machinery from the lease,

about the middle of September; but on the contrary appellant immediately began negotiation for an appellees. As the time which elapsed between the cessation of the work on the lease in the middle of September, and the commencement in the latter part of December was occupied by appellant in diligent effort to obtain drillers for the further development of the lease, it cannot be said that the cessation of work was for such length of time as to reasonably induce the belief that appellant had abandoned the premises and did not intend to further prosecute the work of development. This being the test, we must hold that appellant did not abandon the lease, and was therefore entitled to re-enter and begin to drill well number 5.

For these reasons the judgment must be reversed with directions to dismiss appellees' petition.

Judgment reversed.