## Young v. Venters.

(Decided June 4, 1929.)

MOORE & CHILDERS for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellee, now Grace Venters, was the wife of Thomas Q. Penix. They owned jointly a house and lot at the mouth of Shelby creek, in Pike county. They were divorced, and thereafter the First National Bank of Pikeville obtained a judgment for $500 against Thomas Q. Penix. The sheriff levied on his half interest in the property, and sold it after it had been appraised for the sum of $1,500. The appellant, Young, purchased the property at the sale for less than two-thirds of its appraised value. This was in October, 1924. In November, 1924, W. W. Reynolds obtained a judgment against Thomas Q. Penix for $750. The judgment was for an alleged fee in the divorce action. A few days thereafter John Perry obtained a judgment against Penix for the sum of $1,000, for the further sum of $500, and the further sum of $228. On November 25, 1924, an execution issued in favor of Reynolds, which was levied on the one-half interest of Penix in the tract of land which had been theretofore sold to satisfy the judgment of the bank. The property was sold on the execution in favor of Reynolds on February 2, 1925, when Reynolds became the purchaser. On December 16, 1924, execution issued on the Perry judgment, and that execution was levied on the Perry judgment, and that execution was levied on the right, title, and interest of Penix in the property sold to satisfy the judgment of the bank, which was afterwards sold to satisfy the judgment of Reynolds. It was offered for sale under that levy on the same day that it was sold on the Reynolds judgment, but there was no bidder. Later in February Perry, appearing to admit that his judgment to the extent of $1,000 and $500 was on notes executed to him by Penix without consideration, canceled or remitted all claim under the judgment to this extent. Whereupon the appellee, Grace Venters, paid him the balance of his judgment—that is, $228—and took an assignment of the judgment to herself. She caused an execution to issue on the judgment, which was levied on the same half interest in the land which had been levied on three times before and sold twice.. A sale was had when she purchased the redemption right on May 4, 1925.

In September, 1925, Reynolds transferred to appellant, Young, the judgment which he had obtained

against Penix. Matters thus stood on October 5, 1925, when the appellee tendered to appellant the sum of $619.36 as redemption money; that it, the purchase price at the first sale, which was to satisfy the bank's debt, with interest and penalties. Appellant refused to accept the money, whereupon she paid it to the clerk of the circuit court and took his receipt therefor. On October 24, 1925, as is shown by a memorandum on the margin of the judgment, this money was paid over to the appellant by the clerk and was accepted by him. After Mrs. Venters redeemed the land, which was after her supposed purchase of the redemption right, she took the matter up with the sheriff, who executed to her a deed for one half interest in the property. As she already owned the other half interest, this deed, if valid, vested her with the entire interest in the property.

The appellant, however, demanded a deed of the sheriff by reason of the sale under the Reynolds judgment, which had been assigned to him, and the sheriff obligingly executed a deed to him for the same half interest which he had previously conveyed to the appellee. The chancellor below canceled the deed executed to appellant by the sheriff, and adjudged that the property sold belonged to the appellee. The propriety of this judgment is called in question.

It is admitted by all parties that at the first sale of the property—that is, at the sale made to satisfy the debt of the bank—it was appraised for $1,500, and that appellant bid it in for less than two-thirds of its value. There was a redemption right under the provisions of section 1684, Ky. Stats., and under the provisions of section 1686, Ky. Stats., such redemption right may be sold, and in such cases, when the property is sold, it must be redeemed from both purchasers.

The sale to satisfy the Reynolds judgment was made prior to the sale to satisfy the Perry judgment, which had been assigned to appellee. If anything passed under the sale on the Reynolds judgment, it was no more than the redemption right, and, when the judgment and bid were assigned to the appellant, he became the owner, assuming the validity of the sales of the redemption right, which extinguished any outstanding right in the property. Following the matter to its logical conclusion it might appear that the appellee took nothing by reason of her sale under the Perry judgment. But there was

no one to say that she did not take anything, except the appellant. The sole question is whether appellee had the right to redeem the property. If she did not have the right, the appellant was within his rights in refusing to accept the money, and, if he had stood on that refusal, he would be in position to argue whether appellee took any rights under the sale to satisfy the Perry judgment. He did not stand aloof, however, but he accepted the redemption money, and by his act in so doing he recognized that appellee had vested in her the right of redemption, and when he so recognized that right in her, and accepted her money, he put it out of his power to thereafter deny that she had redeemed the land and recaptured the title. It would be a palpable fraud to allow appellant to accept and retain her money, without her receiving anything in return therefor, and we are quite sure that appellant does not desire to be placed in the light of having accepted her money, when he knew she had no right to redemption. If she had the right of redemption, appellant knew that he did not have the right, and, regardless of whether the right was in him or her, so far as he is concerned, it was in her.

The doctrine of equitable estoppel extends to real estate, as well as to personal estate, and is founded on the principle that a person who has induced another to believe and act in a certain manner will not afterwards be allowed to injure or prejudice the rights of such other person, because of the acts done under the belief that they were agreed to. Stark v. Petty Brothers, 195 Ky. 445, 243 S. W. 50. The doctrine of equitable estoppel is applied to transactions where it is found that it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. Cadallac Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S. W. 669.

Appellant, knowing that he had purchased the property at the sale for the Reynolds debt, and that it was thereafter sold, and the appellee thought she had purchased the redemption right, could not accept the redemption money without acquiescing in her belief that she was the owner of the redemption right. It would be unconscionable to allow him to retain the money which she paid to redeem the property, and at the same time retain the title to the property. He surrendered all right that he had to the property, or any claim against

the property, when he accepted the redemption money, without advising appellee at the time that he still had a claim against the property which he expected to assert.

Judgment affirmed.