## P. V. & K. Coal Co. v. Kelly et al.

Dec. 14, 1945.

James Sampson for appellant.

J. B. Wall for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing in part, affirming in part.

The widow, and heirs-at-law of A. Z. Kelly, deceased, appellees, herein, brought this action in the Harlan Circuit Court against the appellant, P. V. & K. Coal Company.

On May 17, 1917, A. Z. Kelly and his wife, Ludie Kelly (now the appellee, Ludie Kelly Brown), and B. F. Kelly and wife, executed to the Clover Gap Coal Company a lease of the coal underlying a tract of land in Harlan County, owned jointly by A. Z. Kelly and B. F. Kelly. Under the terms of the lease, the lessee was to pay to the lessors ten (10c) cents per ton royalty for each ton of coal mined from the land, payments to be made on the 25th day of each month following the mining of the coal. It was further provided the lessee was to pay a minimum royalty of $10,000 per year payable in equal monthly installments, beginning January 1, 1919, one-half to be paid to A. Z. Kelly and one-half to B. F. Kelly.

On October 15, 1919, the lease was assigned by the

Clover Gap Coal Company to L. A. Bowling and others, who subleased the premises to Home Coal Company, a Pennsylvania corporation, on November 15, 1919. The lease was later assigned by Bowling and others to the Home Coal Company, which company later assigned the lease to the appellant.

It appears that throughout all the period of time mentioned herein, and even prior thereto, the appellant has paid the per ton royalty of ten cents and issued its monthly checks therefor.

The plaintiffs below alleged that the appellant became the owner of the lease by mesne conveyances; that it accepted the provisions of the lease and is now operating the coal under the land and has been since before January 1, 1925, and that under the terms of the lease, it was required to pay them $5,000 per year as minimum royalty, but that for the years from 1925-40 inclusive, excepting the years 1935-36, it had only paid a portion of the amount due.

They set out a table covering the fifteen year period in which is shown the amount paid in each year and the balance due. They sought recovery of the additional amount, which was the difference between the amount paid and the minimum royalty.

The appellant answered denying that the amounts claimed are either due or owing. In its defense, it alleges that because of the unworkable condition of the coal seam, and the unmerchantability of the coal, the payment of the minimum royalty was suspended pursuant to paragraph 13 of the original lease, which provided as follows:

"The lessor agrees that if at any time the said lessee shall be prevented from carrying out any or all of the covenants herein contained, by reason of strikes, or by failure of a workable supply of coal on said premises, then the minimum royalty shall be reduced in proportion to the time lost by said interruption by said above named causes."

Appellant pleads as an additional bar and defense, a supplemental lease executed to the Home Coal Company, on October 15, 1919, by B. F. Kelly and wife, Ludie Kelly, widow of A. Z. Kelly, Floyd Kelly and wife, and

Hobert Kelly and wife, wherein it was provided as follows:

"That if at any time during the progress and during the life of this lease the present lessee, Home Coal Company, shall be prevented from carrying out the covenants above named by reason of epidemics, routs, insurrections, strikes, wars, car shortage, inability of the Railroad Company to move the coal, fires that shall injure or destroy the mine equipment of the lessee or any part thereof, mine faults, or other obstructions or conditions over which the lessee has no control and which are without fault or negligence on its part, then the minimum royalty shall be reduced in proportion to the time lost by said interruptions or obstructions above named; that this amendment to the original lease shall be adopted into Clause No. 5 of said original lease as part thereof as completely as though it had been made and copied therein at the time and date of the original lease."

The appellant further pleads estoppel as against the plaintiffs below because of their conduct, and also charged that they have been guilty of such laches and delay in asserting their alleged claim as to estop them from now asserting same.

It also alleged that since none of the leases or assignments were signed and executed by the appellant, who is the party sought to be charged, the Five Year Statute of Limitations, KRS 413.120, applies.

Upon trial of the case, the court below adjudged that the Statute of Five Year Limitations applies, and denied the plaintiffs the recovery of any sum that had been due for more than five years, but found for the appellees the full amount claimed as per table above for the years 1937 to 1940 inclusive, with exception of the year 1939, in which year credit was given for loss of operative time due to strikes, thereby reducing the sum to $662.42.

From that judgment the appellant prosecutes this appeal. The appellees cross-appeal, insisting that the Fifteen Year Statute of Limitations, KRS 413.090, applies rather than the Five Year; that the court erred in reducing the amount for the year 1939, and further erred in overruling their exceptions to certain depositions.

In view of our ultimate conclusion, it is unnecessary for us to discuss all of the questions raised by briefs herein.

The appellees introduced only two witnesses, Floyd H. Kelly and Marvin Kelly, by whom they proved the execution of the original lease and the supplemental lease and verified the statements contained in the petition as to the amount of royalty claimed, about all of which there was no dispute.

The evidence of the appellant is rather voluminous, containing the evidence of numerous witnesses by whom was proven the unworkability of the coal seam; the unmerchantability of the coal; the extreme difficulties of operating and mining the coal; the expenditures in attempting to effectuate a workable mine; the conduct of the appellees in receiving their respective checks for royalties, each of which was marked payment in full, and the failure throughout all this period to indicate any dissatisfaction or manifest any intention of making additional claim, all of which, as far as this record discloses, stands uncontradicted.

The testimony concerning the unworkable conditions and the unmerchantability of the coal appears to us to meet the burden thrust upon the appellant of showing itself entitled to the saving provision of clause 13 of the original lease, but since we arrive at our conclusion herein by coupling that with other matters presented, it becomes unnecessary to elaborate further on that phase of the case.

Mr. Robinson, the Vice-President and Manager of the Coal Company, testified that the checks mentioned above had been paid the appellees for a period of 25 years; that at no time had there been manifested any dissatisfaction or intent to demand more than the amount as shown upon the face of the checks; that Floyd and Marvin Kelly lived pretty close to the mine before they moved to Berea and that on one occasion one or the other of them said that they realized the company had a tough proposition and that it could not expect any trouble from them for not having mined the minimum royalty. This is undisputed in this record. We are, therefore, faced with the underlying consideration of an attitude or conduct on the part of the appellees in receiving checks through such a long period of time, fail-

ing to manifest dissent and by the very act really manifesting consent, and by their acquiescence lending encouragement to the belief that the payments made were entirely satisfactory, during all of which time the appellant was making improvements and putting forth every effort to make a workable mine, all at great cost to it. In the first place, it appears to us that waiting all this time before making a demand was inexcusable delay. This court said in Klineline, Sr. v. Head, 205 Ky. 644, 266 S. W. 370, 372:

"Laches is an equitable doctrine, the elements of which are short of an estoppel, and the time in which it may ripen is short of the applicable period of limitation, and it is invoked in equity to defeat a tardy litigant on account of whose inexcusable delay, after possession of knowledge of the facts, his adversary, who has materially changed his situation, may defeat a recovery or defense because of the other's passiveness, if during the delay, and in reliance on such nonaction, a change has occurred in the situation and condition of the adversary to such an extent that to uphold the action and to grant the relief would put it beyond the power of the adversary to restore himself to his former situation or the court to place him in statu quo."

See also Anspacher v. Utterback's Administrator, et al., 252 Ky. 666, 68 S. W. 2d 15.

Proper analysis of the case leads us yet further and presents the principle of estoppel. In approaching this matter from that standpoint, it is unimportant whether the conduct consists of some physical activity or of the conveyance of an idea. As was stated before, Marvin and Floyd Kelly lived close to the mine. They could see what was going on, and from the testimony of Mr. Robinson, they knew something of the difficulties confronting the appellant in mining the coal, and of the efforts to make this a workable mine. It appears to us that if a person is silent with knowledge that another is doing an act in the reasonable belief that what he is doing is entirely satisfactory, when that person could easily have registered dissent or given information otherwise, then that person ought not to be entitled to recover.

In 19 Am. Jur., Estoppel, Section 34, estoppel is defined as follows:

"Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." The failure to act on the part of the appellees certainly was calculated to convey an idea to the appellant. In Skaggs v. Ferguson, 224 Ky. 775, 7 S. W. 2d 213, 215, the court said:

"It cannot be doubted that one may be precluded from asserting a claim which would be meritorious except for his conduct. That is the practical effect of estoppel. Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514. The appellant could not to the prejudice of appellee deny the validity of his promise to pay the first premiums on these policies, when he knew they had been issued and accepted by his children. Lockhart v. Kentland Coal Co., 182 Ky. 673, 207 S. W. 18. He had the right to stand on the original contract and refuse to pay the premium on any of the policies, but he could not see the contract performed in part and escape a pro rata liability. It is the general rule that a party may not keep silent when he ought to speak and allow other parties to be misled to their prejudice by his silence. McGuire v. Carroll Construction Co., 177 Ky. 675, 198 S. W. 6. If appellant did not mean to pay the first premiums on the policies which were issued, he should have promptly advised appellee to that effect. It is often the case that a man may be denied a right which he may have asserted because of his neglect to do something which he should have done at a proper time. Jett v. Jett, 171 Ky. 548, 188 S. W. 669."

Our courts have gone a bit further than that. In the case of Young v. Venters, 229 Ky. 806, 18 S. W. 2d 277, 278, it was said:

"The doctrine of equitable estoppel is applied to transactions where it is found that it would be uncon-

scionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit.''

See also Jones v. Kentucky Glycerine Co., 226 Ky. 676, 11 S. W. 2d 713; Cadillac Oil & Gas Co. v. Harrison et al., 196 Ky. 290, 244 S. W. 669.

It was testified by Mr. Robinson that the Company proceeded on the idea that the appellees were consenting to the payments as made and were not insisting upon the payment of the minimum royalty; that thus believing, the Company spent large sums of money, time and effort, and incurred indebtedness which it would not otherwise have incurred, whereas it would have sought cancellation of the lease had there been any reason to believe a demand for the payment of a minimum royalty would be made.

The logic of the case demands, and the evidence is sufficient to support, an invocation and application of the doctrine of estoppel. We therefore, conclude that the court erred in allowing the appellees anything at all on their claim.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeal, with directions to enter judgment consonant with this opinion.