**Ora F. DUVAL and Ted Osborn,**
**Appellants,**

**v.**

**Eleanor Chinn STEELE, Appellee.**

Court of Appeals of Kentucky.

Feb. 6, 1970.

Rehearing Denied May 22, 1970.

Calvert T. Roszell, McDonald, Alford & Roszell, Lexington, for appellants.

Thomas H. Burnett, Hurst and Burnett, Lexington, for appellee.

STEINFELD, Judge.

Appellee, Eleanor Chinn Steele, brought an action seeking a declaration of rights (KRS 418.040; CR 57) and an adjudication that a lease from her to appellant, Ora F. Duval, had been terminated. The lease had been assigned to appellant, Ted Osborn, who counterclaimed for specific performance to require Mrs. Steele to con-

vey the leased land to him pursuant to an option included in the lease, and for damages. The trial court found that the lease had not been terminated but it dismissed the counterclaim. Duval and Osborn appeal. We reverse.

Mrs. Steele, the owner of the 17-acre "Old Hickory Farm" on the Paris Pike in Fayette County, leased it to Duval for a three-year term ending October 25, 1966. Among other things the lessee agreed "Not to suffer or commit any waste of the premises, nor make any unlawful, improper or offensive use of same." Additionally, it contained the following:

"The lessee has the option to purchase this property for the sum of Sixty Thousand Dollars ($60,000.00) at the end of three (3) years. The owner and the lessee may agree on a different time of conveyance if they decide to do so. Terms to be agreed by owner and purchaser. If highway takes any land or causes any damage to the 17 A. tract, said amount is to be deducted from sale price."

The price was changed by agreement to $62,000.00 net and there were added the words and figures, "$62,000.00 net plus buyer pay real estate commission. E.C.S." The lease authorized the lessor to terminate and reenter in the event of a breach of any covenant or agreement by the lessee, but there was no provision for loss of the option by reason of the termination of the lease.

In the fall of 1963 Duval was negotiating with Osborn to sell him the option. Duval testified that "There wasn't much doubt that I had a right to exercise the option before the three-year period but what was in doubt was whether or not I could get a conveyance for it at a time I would agree to exercise the option. It said the owner and lessee may agree on a different time of conveyance if they decide to do so. So in order to just tie it down whenever I paid the $62,000.00,

I could get deed to the property at that time, was the reason we had the *adendum* drawn." He went to Mrs. Steele and at his request she signed the addendum which reads:

"I, the Undersigned, ELEANOR C. STEELE, do hereby agree on this the 28th day of April, 1964, to convey my property located on the Paris Pike, Lexington, Fayette County, Kentucky, known as OLD HICKORY FARM, to ORA F. DUVAL, or anyone whom he may authorize me to convey to on or before October 25, 1966, upon the payment of the consideration agreed on in Lease and Option to Purchase Contract entered into on October 25, 1963, and is part of said contract entered into by and between Eleanor C. (Chinn) Steele and Ora F. Duval on October 25, 1963."

She received no compensation for signing and neither party surrendered any right under the lease or option.

On the 30th day of April, 1964, Osborn and Duval entered into a "Purchase & Sales Contract" by which Duval assigned to Osborn all of his rights for which Osborn paid $15,000.00. A substantial real estate agent's commission also was paid. After that date Osborn did not occupy the farm but subleased it to several tenants.

On directions of Mrs. Steele, Nathan Elliott, Jr., an attorney, wrote Osborn a letter on April 19, 1965, complaining about the maintenance of the farm. Osborn met with the lawyer and Mrs. Steele for a discussion about the waste. Osborn testified that he also talked about his option to purchase but no question was raised by either Elliott or Mrs. Steele concerning that right.

Osborn heard nothing more from Mrs. Steele or her counsel until March 11, 1966, when Thomas Burnett who succeeded Elliott as Mrs. Steele's attorney notified Osborn that by reason of the alleged waste

the lease was terminated. On April 29, 1966, this action was filed.

After issues were joined the suit was referred to the master commissioner who heard much testimony. He reported that the tenants had failed to maintain the property according to the terms of the lease but Mrs. Steele's "* * * delay in exercising her option to terminate * * * was unreasonable and the Defendant Osborn was misled into believing that Plaintiff was abandoning her claim." He concluded that she "* * * had waived her right to terminate the lease * .* *."

The commissioner reported "* * * that the 'addendum' * * * was a bare offer by the Plaintiff by which the Plaintiff promised to convey the leased property in accordance with the option contained in the lease prior to the expiration of the lease." He stated that it varied the option by changing the time for its exercise and being unsupported by a consideration he found that "* * * acceptance of the offer was required in accordance with its terms before the withdrawal * * *" by Mrs. Steele. He opined that "* * * the notice of termination letter of March 11, 1966, and the filing of the within action was a termination of this offer and the defendant Osborn did not make any attempt to accept the offer made by this 'addendum' prior thereto."

The commissioner reasoned that if he was in error in those conclusions a letter written by Osborn on May 31, 1966, and another letter written on June 9, 1966, was not an acceptance because it was incumbent upon Osborn to tender $62,000.00 to Mrs. Steele. From a judgment confirming that report, except as to some matters not pertinent to this appeal, Duval and Osborn have appealed here but no cross-appeal has been filed by Mrs. Steele.

Osborn notes that on May 31, 1966, approximately four months prior to the end of the lease term, he wrote a letter to Mrs. Steele saying: "* * * I hereby exercise the option to purchase the 17-acre tract on the Paris Pike known as Old Hickory Farm under Option dated April 28, 1964, granted to Ora F. Duval, or anyone whom he may authorize you to convey said premises to." He reminded Mrs. Steele of her knowledge that Duval had assigned the option to him and requested that she present a deed by June 9, 1966, at which time Osborn would pay in full for the property.

■ Among other contentions for reversal, Osborn argues that Mrs. Steele is "estopped to deny the validity of the addendum," and that the option provided "the owner and the lessee may agree on a different time of conveyance if they decide to do so." He says that when Mrs. Steele signed the "addendum" she carried out that provision changing the time of the conveyance from "* * * the end of the three (3) years" to "* * * on or before October 25, 1966, * * *."

"Estoppel like laches is always a question of fact to be determined by the circumstances of each case." Anspacher v. Utterback's Adm'r, 252 Ky. 666, 68 S.W.2d 15 (1934). Cf. Byerly Motors, Inc. v. Phillips Petroleum Co., Ky., 346 S.W.2d 762 (1961). The applicable rule was quoted in Mid-Century Limited v. United Cigar-Whelan Stores, Corp., 109 F.Supp. 433 (D.C.D.C. 1953), from Pollock on Contracts, Thirteenth Edition, 1950, p. 152 as follows:

"Where the parties to a contract agree to a variation of it and, in pursuance thereof, one party makes a promise to the other which he knows will be acted on and which is in fact acted on by the promisee, the promise will bind the promisor to the extent that he must not act inconsistently with it, even though the promise may not be supported by consideration, and even if the effect of it is to vary the terms of a contract under seal by a term of less value."

Appellants also cite Young v. Venters, 229 Ky. 806, 18 S.W.2d 277 (1929), in which we said:

"The doctrine of equitable estoppel extends to real estate, as well as to personal estate, and is founded on the principle that a person who has induced another to believe and act in a certain manner will not afterwards be allowed to injure or prejudice the rights of such other person, because of the acts done under the belief that they were agreed to. Stark v. Petty Brothers, 195 Ky. 445, 243 S.W. 50. The doctrine of equitable estoppel is applied to transactions where it is found that it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. Ca*d*allac [Cadillac] Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S.W. 669."

Appellee responds that all of the elements of estoppel contained in 19 Am.Jur. 744, Estoppel, Section 87 which we quoted in Jones v. Travis, 302 Ky. 367, 194 S.W.2d 841 (1946), were not present. She refers to "(1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts." and claims that she concealed no material fact. Mrs. Steele represented that she would "* * * convey to on or before October 25, 1966, * * * Duval or to anyone whom he may authorize me to convey * * *." Osborn paid a substantial amount after he learned Mrs. Steele had signed the "addendum," he assumed the lease, and the trial court held that Mrs. Steele could not complain that he did not carry out its terms. Mrs. Steele is estopped to deny the validity of the "addendum." P. V. & K. Coal Co. v. Kelly, 301 Ky. 180, 191 S.W.2d 231 (1945) and Tarter v. Turpin, Ky., 291 S.W.2d 547, 60 A.L.R.2d 1205 (1956). It is unnecessary for us to determine the other contentions respecting consideration.

We now approach the argument that Osborn did not properly exercise his option to purchase. It will be recalled that on May 31, 1966, he wrote a letter to Mrs. Steele in which he reminded her that he held the assignment from Duval of the option rights and he said "You are further notified that you should present to me a deed to such property on or before June 9, 1966, at which time I will pay you in full the consideration mentioned in said option." Again on June 9, 1966, he wrote Mrs. Steele as follows:

"As you know on May 31, 1966, I exercised my option to purchase Old Hickory Farm.

Furthermore, of course, there is pending in the Fayette Circuit Court, the action which you filed against me and Ora F. Duval in an attempt to terminate the lease.

In view of the fact that you have not indicated an intention to conform to my exercise of the option dated May 31, 1966, and further in view of the pendency of the action, I am enclosing herewith my check in the sum of $400.00 representing rental for the month of June.

We, of course, are negotiating with respect to the lawsuit but the enclosed check is sent to you for rental without waiving any of my rights under the lease and the option dated April 28, 1964, and the exercise of the option dated May 31, 1966.

It will be appreciated if you will notify me with respect to the time in which I might expect to receive a deed to the property pursuant to my notice of exercise of the option."

He forwarded copies of these two letters to attorneys who were then and had previously represented Mrs. Steele. The option agreement is silent as to the method to be used to exercise it. The appellee

claims that a tender of the purchase price was essential and that without such tender the option was not exercised. She makes no claim that Osborn was unable to pay for the property.

Through her attorneys and by court action Mrs. Steele was attempting to terminate the lease. Her position was that Osborn had no rights to the property. It is apparent that a tender of the purchase price would have been a futile act. In Blake v. Clark, 217 Ky. 340, 289 S.W. 287 (1926), we said:

"Ordinarily, of course, where the stipulations of the contract are concurrent, as where the deed is to be delivered on the payment of the price, an actual tender and demand by one party is necessary to put the other party in default. But the law does not require a useless ceremony, and no tender of performance on the part of the purchaser is necessary, where the vendor has already announced that he will not carry out the contract. Harmon v. Thompson, 119 Ky. 528, 84 S.W. 569, 27 Ky.Law Rep. 181; 27 R.C.L. 462; 39 Cyc. 2089. As the petition in this case alleged that the defendant repudiated the contract and announced that he would not sell the property, this was sufficient to dispense with the necessity of alleging any tender of performance by the plaintiffs."

86 C.J.S. Tender § 5, p. 559, states that a tender may be waived by the tenderee "* * * by denying the existence of a binding contract, by declaring the contract to be at an end, * * *." That is what Mrs. Steele did. Also see Major v. Price, 196 Va. 526, 84 S.E.2d 445 (1954); LeBlanc v. Molloy, 335 Mass. 636, 141 N.E.2d 519 (1957) and 17 Am.Jur.2d 397, Contracts, Section 60.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.