## Barnes, et al. v. Montjoy's Administrator.

(Decided November 9, 1926.)

Appeal from Montgomery Circuit Court.

1. Homestead.—Homestead right, once acquired, continues as long as occupancy exists.

2. Judgment—Permitting Filing Answer Claiming Homestead After End of Term at which Judgment was Rendered Ordering Sale of Land, in Effect Denying Such Claim, was Error (Civil Code of Practice, Section 518).—Under Civil Code of Practice, section 518,

permitting answer claiming homestead to be filed after adjournment of term at which judgment was rendered upholding liens on land and ordering sale thereof, in effect denying claim of homestead, was error, and such answer should have been stricken from the record on motion.

3. Judgment.—Evidence of disability preventing homestead claimant from appearing and objecting to levy of execution on land held not to justify setting aside judgment distributing proceeds of sale.

W. B. WHITE for appellant.

HENRY WATSON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

On the 28th of June, 1923, the sheriff of Montgomery county levied an execution in favor of R. M. and J. M. Barnes against John W. Montjoy, upon a tract of thirty acres of land as the property of John W. Montjoy, the levy being made subject to a prior mortgage lien of $5,-400.00, with interest from May, 1923, due to Martin and Emma Ramey. In accordance with the levy the property was duly advertised, appraised and sold on the 15th of October, 1923, and R. M. and J. M. Barnes became the purchasers for the amount of the execution, debt and costs, $845.10. Afterwards Martin and Emma Ramey, together with R. M. and J. M. Barnes, filed a joint suit in equity in the Montgomery circuit court to enforce their respective liens upon the land. The defendant was duly summoned on the 18th of December, 1923. The January term of court convened on the 27th of January, 1924, at which term, no answer having been filed, a default judgment was entered in favor of both plaintiffs, upholding the lien of each, but giving priority to the Ramey lien; it being further adjudged that the land was indivisible and that it be sold as a whole; that the proceeds should be applied, first, to the payment of the Ramey debt, second, to the payment of the Barnes debt, and third, the overplus, if any, to the defendant, the master commissioner being directed to take sale bonds payable to the plaintiffs for their respective debts in the order named, and for the overplus, if any, to John W. Montjoy. Pursuant to this judgment the master commissioner of the Montgomery circuit court sold this property on the 18th day of February, 1924, realizing the exact amount due both plaintiffs and for which purchase money notes were executed pay-

able to the parties for their respective interests. This report was duly filed at the ensuing May term of court, and no exceptions having been filed was confirmed on the 15th day of that term; subsequently the sale bonds were paid and deed made to the purchaser. In the meantime, on the 28th day of February, 1924, John W. Montjoy filed in the circuit clerk's office in vacation an answer, asserting his right to homestead in the land in question. On the first day of the May term of court R. M. and J. M. Barnes entered motion to strike this answer from the files. The motion was overruled and issues were made by additional pleadings upon which depositions were taken.

Pending this, on the 8th day of December, 1924, John W. Montjoy filed a suit under section 518 of the Civil Code seeking to have the original judgment modified and vacated in so far as it adjudged anything in favor of R. M. and J. M. Barnes. The petition as amended recited all the steps taken in the former suit, set out in full the answer he had filed therein, reasserted his claim to homestead, and also alleged that the debt of R. M. and J. M. Barnes was for groceries and merchandise, and had been contracted subsequent to his purchase of the land; that during the time between the service of the summons and the time the judgment was entered against him and up to February 28th, he was confined to his bed at home under the care of a physician, who informed him that he was suffering from heart and kidney trouble and from nervous debility, preventing him from appearing and defending, this being relied upon as unavoidable casualty and misfortune. Appropriate pleadings made up the issues, and, over Barnes' objection, the two suits were consolidated, further proof was taken and on final hearing the court set aside so much of the original judgment as adjudged J. M. and R. M. Barnes a lien on the proceeds of sale after payment of the Ramey debt and costs and held it for naught and dismissed the petition of R. M. and J. M. Barnes insofar as it attempted to subject such proceeds of sale. It was further adjudged that John W. Montjoy was entitled to a homestead of $1,000.00 in the excess of the proceeds of sale over and above the Ramey debt and costs; and as it appeared that such excess amounted to the sum of $761.50, the receiver of the court was ordered to pay this amount to Ramey or his attorney. Montjoy was also awarded his costs in the action. R. M. and J. M. Barnes appeal. In the meantime J. W. Montjoy

has died and the action has been revived in the name of his administrator.

(1) John W. Montjoy was a widower, the date of his wife's death not appearing; the evidence shows that he has two daughters and no doubt he raised them, but beyond the bare statement that he had been a housekeeper for more than thirty years the proof is very meager as to his household arrangements. He purchased this tract of land in 1907, and there is evidence that he has been living on it continuously since two years before that date, presumably with a family. His younger daughter and her husband testify that they were living with him for two years before the sale, and state that this daughter kept house for her father before her marriage some years ago. Obviously a married woman is a member of her husband's family, and it could hardly be said that the two were members of her father's family, but as it appears that prior to her marriage she was her father's housekeeper, we may assume that John W. Montjoy was then a housekeeper with a family and was entitled to a homestead. Such right being once acquired continues so long as the occupancy exists, so that we may conclude that if properly asserted John W. Montjoy was entitled to a homestead in the property.

(2) It is insisted that the court erred in permitting John W. Montjoy to file an answer in the first suit after the adjournment of the court at which judgment was entered. We think this point well taken. That judgment upheld Barnes' lien, ordered a sale and appropriated the proceeds of sale in payment of the Barnes debt, subject only to the priority of the Ramey lien, a clear denial of any right of homestead in Montjoy, who was awarded the remaining surplus, if any. As to these matters it was a finality and until reversed, vacated or modified in some of the ways pointed out by section 518 of the Civil Code fell within the familiar rule of *res judicata.* The same question arose under a similar state of facts in Kimbrough v. Harbett, 110 Ky. 97-8, in which we said:

> "The question what relief, if any, appellant was entitled to under the allegations of the petition which were confessed by appellees' failure to answer, was necessarily presented to the court when the case was then presented, and if he erred in his decision the only way to correct it was by appeal. Hardin v. Hardin, 6 Ky. Law Rep. 662; Bridgford v.

Fogg, 14 S. W. 600; Cheatham v. Whitman, 86 Ky. 614. No appeal has been taken from that judgment. It remains in full force. The court below after the expiration of the term at which it was rendered had no power to vacate or modify it, except upon the grounds set out in section 518 of the Code of Practice, none of which are alleged. It remains, therefore, to determine what the rights of the parties are under the judgment. In Harpending's Extrx. v. Wylie, 76 Ky. 158, a judgment in an action against a husband and wife foreclosing a mortgage executed by them, which had been rendered by default, was held to preclude them from thereafter setting up a homestead exemption in the land. This case was followed in Davis v. Jenkins, 93 Ky. 353, and in Honaker v. Cecil, 84 Ky. 202; Snapp v. Snapp, 87 Ky. 554; and Hill v. Lancaster, 88 Ky. 338, the same principle was followed where a judgment by default had been rendered on a petition to subject the land to the debt of the husband, where a conveyance had been made in fraud of the rights of creditors. These decisions rest upon the principle that a party who has had his day in court will not be allowed thereafter to set up a defense which he should have then pleaded. See Turner v. Gill, 105 Ky. 414; Sorrell v. Samuels, 20 Rep. 1498. The judgment ordering the land to be sold for the satisfaction of appellant's debt was necessarily a determination that it was subject to such sale; and, that judgment being in force, he cannot set up a right to a homestead in the land. The court below erred in allowing the answer and counterclaim to be filed, as the matters pleaded in it have been determined and settled by the judgment entered in the action at the preceding term, over which it then had no control." To the same effect see Wren v. Cooksey, 155 Ky. 620.

In the absence of a final order such as is indicated above disposing of the proceeds of sale the converse is true and the debtor may assert a homestead right, and the line of cases so holding is in entire harmony with the views above expressed. As to this we have said:

"It is the rule in this state that where the necessary conditions are present the debtor is entitled to a homestead in the surplus proceeds arising from the sale of his property to pay lien debts, and may as-

sert his right at any time before there is a final order disposing of such proceeds. Marcum v. Edwards, 181 Ky. 683. Here the court, after adjudging that the taxes and certain lien debts be paid, directed the balance to be held subject to the further orders of the court. It is true that appellant recovered judgment for its debt and that its attachment was sustained, but as the judgment was not accompanied by an order applying the attached proceeds to the payment of its debt, the judgment was not conclusive of the right of homestead, Marcum v. Edwards, *supra*, but the proceeds as theretofore directed still remained subject to the further orders of the court. Before any order disposing of the proceeds was made Duncan claimed the homestead, and the chancellor did not err in sustaining his claim." First National Bank v. Duncan, 210 Ky. 777.

Any apparent confusion in other decisions may be reconciled by the application of the rule laid down in above cases, except perhaps in the case of Staun & Co. v. Proctor, Jr., 152 Ky. 143. But the right to set aside a final order at a subsequent term of court and then to permit a plea claiming homestead was not considered in that case. We therefore conclude the answer filed in vacation should have been stricken from the record.

3. As John W. Montjoy is shown to have had a potential right to homestead, if properly asserted, the crucial question in the case is whether he was prevented by unavoidable casualty from appearing and making a defense to the original action, as alleged in the petition for vacation. On this question several of his near relatives, including his daughters and sons-in-law, have testified that his memory was bad; that he was generally debilitated, and that they could not get him to take any interest in his affairs, although they admit that they knew of the court proceedings. They further testify that he was under the treatment of a physician, who diagnosed his case as kidney and heart trouble and hardening of the arteries. The doctor, however, has not testified, and these witnesses admitted the old gentleman was going around and attending to some buisness during all of the time. He did not testify on this issue and his daughter testified that he was unable to do so, but he did give his deposition on the 28th of August upon the issues raised in his answer in the original suit. At that time no casualty was claimed

and he did not mention his illness. While his testimony shows some lapse of memory, he evinced a clear knowledge of all his affairs, remembered when he purchased the farm, when the debts were incurred, how long he had been a housekeeper and with reasonable clearness presented his side of the matters then in issue. It is further shown by the defendants that he was transacting business during this period, was thoroughly at himself and knew what he was doing; that he was present at both the execution sale and the sale by the master commissioner. At the latter sale he had a conversation, first with R. M. Barnes and later with J. M. Barnes, in which he assured them that he was trying to get a loan on the property and asked that the sale be postponed for that purpose. Another witness testifies to having a cattle trade with him in December, about the time the summons was served, and of his ability to take care of himself in the transaction, and the deputy sheriff who served the summons testifies that she found the old gentleman at his barn some distance from his residence; that he was not only rational at the time but did not appear to be suffering from any disability. No doubt serious illness or mental incapacity might be such a casualty as would prevent a litigant from appearing and defending a lawsuit, but under all the facts of this case, coupled with the circumstance that the petition for vacation was not filed until nine months after the judgment and several months after he had filed the answer in the original action and taken proof therein, it is hard to resist the impression that it was an afterthought; at any rate the evidence is not sufficient to convince the court that his disability prevented him from appearing and making a defense in the original action.

It follows that the court erred in setting aside the original judgment.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.