# Ohio Valley Fire & Marine Insurance Company's Receiver v. Newman et al.

(Decided January 29, 1929.)

J. D. MOCQUOT for appellant.

EDGAR T. WASHBURN for appellees.

OPINION OF THE COURT BY COMMISSIONER. STANLEY—Affirming.

On May 1, 1925, the receiver of the Ohio Valley Fire & Marine Insurance Company recovered of A. L. Newman a judgment for $37,863.40 on a note and the enforcement of a lien on 1,155 acres of land in Ballard county, Ky., to secure its payment. Before confirmation of the sale, A. L. Newman died, and the action was revived against his heirs, who filed exceptions to the commissioner's report of sale on the grounds that A. L. Newman was non compos mentis and incapable of entering into the contract which was the basis of the suit, and also incapable of advising with his attorneys with reference to his defense. It was further alleged that there was no consideration for the note, and that it had been procured by fraud of the payee. These two latter facts were set up in answers filed in the original action, although no attempt was made to sustain them by evidence, because of which the judgment was rendered against Newman. An appeal was had from the order overruling those exceptions, which judgment was affirmed in Newman, etc., v. Ohio Valley Fire & Marine Insurance Co., 221 Ky. 616, 299 S. W. 559.

It was stated in concluding the opinion: "Further, as this was a direct attack upon the judgment and was

not made at the term of court at which the judgment was rendered, neither the ground of incompetency nor that of fraud in the obtention of the judgment could be raised by motion, but for either of those grounds relief should be sought under section 518 of the Civil Code, a course that it is indicated appellants have also taken.''

The suit under section 518, referred to, was filed about the same time as the exceptions, and it has now reached this court. Reference is made to the former opinion for a more detailed statement of the facts. The same allegations made in the exceptions to the commissioner's report of sale were made in the petition for a new trial with greater elaboration.

It is disclosed in the evidence that an attorney filed an answer for Newman in the original action pleading no consideration for the execution of the note and mortgage sued on. Although he testifies in this case that he did that, neither he nor any one else states why he withdrew from the case. Other counsel afterward represented Mr. Newman in seeking to have discharged a receiver appointed to take charge of the property, and they filed an amended answer pleading fraud. This attorney testifies that the case was set for trial twice, and he notified the defendant to be present and to produce certain evidence, but he did not appear on either occasion, and on the last day the attorney stated to the court that he could ask no further indulgence, and had his name stricken from the record as counsel for the defendant. The judgment was thereupon rendered. It is not shown that either lawyer ever notified his client of his action in withdrawing from the case though it may be presumed he had notice as to the one first representing him.

Considerable evidence was received as to the condition of Mr. Newman's mind covering a period beginning before the execution of the original note (the one sued on being a renewal) and ending with his death. Many of his neighbors and others who knew him well testified to his peculiar acts and conduct upon which they based their opinions that he was of unsound mind and incapable of understanding the nature of the instruments which he signed, mortgaging substantially all the property he owned to secure the payment of a note, the greater part of which was for stock in the insurance company. They further expressed the opinion that because of his condition he was not capable of attending to business, particularly of making a proper defense to the suit filed against

him by the insurance company. Three specialists in mental diseases testified as to the symptoms of the disease, known as paranoia, which the evidence disclosed were manifested in the actions and life of Mr. Newman; and, upon hypothetical questions, the doctors expressed the opinion that he was afflicted with that disease and incapable of transacting business. There was evidence to the contrary, and several witnesses expressed the opinion that, while eccentric, the old gentleman was of sound mind and fully capable of attending to business. The facts upon which these lay witnesses base their opinions, however, are not very complete, and it would appear that their opportunities for forming them were not as good as those of the witnesses introduced by the plaintiff. A doctor who had known Mr. Newman for many years expressed the opinion that he was of sound mind, but he did not profess to have any special knowledge of mental diseases, and gives no particular reason for his conclusion.

Upon submission of the case, the court sustained the prayer of the petition and set aside the original judgment. It is from the order granting a new trial that this appeal is prosecuted.

Our sole concern is to review the evidence as it supports or fails to support this order, and we are not concerned with it as it may affect the merits of the original action. As heretofore stated, in a suit brought under section 518 of the Civil Code, two things must be made to appear; namely (1) grounds for the vacating of the judgment, and (2) the establishment of a prima facie valid defense to the action. Burks, etc., v. Douglas, etc., 156 Ky. 462, 161 S. W. 225. The petitioners in this case rely upon the evidence of mental incapacity as supporting both of these factors. Without further reviewing the evidence, we may say that it fully authorized the action of the court. If the defendant was unable by reason of mental infirmities to give proper attention to his lawsuit and by reason thereof the judgment was rendered against him, it would be an injustice not to set it aside. While the judgment would not be regarded as void, because he was before the court, as stated in Bean, etc., v. Haffendorfer Bros., 84 Ky. 685, 2 S. W. 556, 8 Ky. Law Rep. 739: ''The fact exists, nevertheless, that he was just as unconscious of the pendency of that action as if he never had been summoned, and as utterly incompetent to make an intel-

ligent defense to it, . . . as if he had been a helpless infant.''

That case was followed in Small, etc., v. Reeves, 104 Ky. 289, 46 S. W. 726, 20 Ky. Law Rep. 504. In Ray v. Arnett, 106 S. W. 828, 32 Ky. Law Rep. 562, it was held that, where one was sick and unable to attend the term of court at which her cause was tried and depended upon her attorney to take care of her interest, but who abandoned the case without notice to his client, she was entitled to a new trial because of unavoidable casualty and misfortune. See, also, Southern Nat. Life Insurance Co. v. Ford's Adm'r, 151 Ky. 476, 152 S. W. 243; Adams v. Nelson, 214 Ky. 411, 283 S. W. 405. The defendant in the original action had two attorneys representing him at different times, both of whom withdrew from the case, and there is nothing in the record to show that they notified Mr. Newman of their abandonment, even had such notice been of any effect.

Without considering or in any wise determining the effect of such evidence on the merits of the case, we are of the opinion that there was a prima facie showing of a valid defense to the action, which was not presented by reason of unavoidable casualty and misfortune. Certainly the evidence is not such as would justify this court in interfering with the broad discretion vested in the chancellor. Wilson v. Rockcastle Mining, Lumber & Oil Co., 200 Ky. 484, 255 S. W. 88. As bearing on the care which the courts will exercise in relation to the affairs of persons apparently of unsound mind, see Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478, 1 L. R. A. 610, Rath's Committee v. Smith, 180 Ky. 326, 202 S. W. 501, and Clay v. Clay's Committee et al., 179 Ky. 494, 200 S. W. 934.

The judgment is therefore affirmed.