## Louisville Joint Stock Land Bank v. McMurry.

May 5, 1939.

J. E. WARREN and STEVE WILEY for appellant.

WEBB & WEBB and W. J. McMURRY for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, Louisville Joint Stock Land Bank, plaintiff below, will be referred to herein as plaintiff, and appellee, T. H. McMurry, defendant below, will be

referred to as defendant. On March 16, 1934, plaintiff filed its petition in equity on a $3,000 note dated November 4, 1922, secured by a mortgage of even date upon 80 acres of land against the makers of the note, A. K. McMurry and Porter McMurry. The petition alleged that on December 14, 1925, T. H. McMurry assumed this mortgage and the plaintiff seeks personal judgment against him and the other defendants for the balance of $2596.59 due on the note, with 6% interest thereon from June 1, 1933, and seeks a foreclosure of the mortgage lien. Summons, and also a notice the plaintiff would move for the appointment of a receiver on April 11, 1934, were served on all defendants on March 16, 1934. None of them answered, and upon the calling of the equity docket on the third day of the term, which was April 11, 1934, the court rendered default judgment against each defendant in the amount sued for and ordered the land sold to satisfy the mortgage lien.

After the term of court expired at which this default judgment was rendered, the defendant, T. H. McMurry on April 26, 1934, filed his petition under Section 518, subsection 7 of the Civil Code of Practice, seeking to have the judgment set aside and a new trial granted him on the ground of unavoidable casualty and misfortune. The casualty and misfortune alleged in the petition were that ill health and weather conditions prevented him from defending the original suit; also he was under the impression that the only purpose of the suit was the appointment of a receiver, to which he had no objections. In his petition for a new trial he pleaded his defense to the original action was that in 1925 R. L. Royster brought suit against A. K., Porter, T. H., and W. J. McMurry and the Federal Land Bank of Louisville, Kentucky, to recover judgment against all four of the McMurrys on a note for $1896.84 and to enforce a mortgage upon this 80 acre tract of land, which mortgage was junior to a $3000 mortgage held by the Federal Land Bank of Louisville; that he became the purchaser of this land when sold by decree of the court in the Royster action and deed was made to him reciting he had assumed the $3000 debt of the Federal Land Bank; that he did sign a paper in that action in which he attempted to assume this indebtedness, but his signing of the paper was without consideration, and the master commissioner's report of sale to which this paper was attached, and the deed subsequently made to him

by the master commissioner were null and void because the land was not sold in conformity to the judgment entered in the Royster action.

The answer of the Louisville Joint Stock Land Bank to McMurry's petition for a new trial was a traverse followed by an affirmative plea that McMurry knew it was this bank and not the Federal Land Bank of Louisville which held the $3000 first mortgage on this land (and this fact is admitted in McMurry's testimony); that the writing McMurry executed to the master commissioner wherein he assumed the $3000 first mortgage was in lieu of bond and he filed no exceptions to the report of sale made by the master commissioner in the Royster action, and he accepted a deed to this land reciting he had assumed the $3000 first mortgage; that McMurry took full and complete possession of and exercised ownership over this land, and from June 12, 1926, to December 1, 1933, he made regular semi-annual payments of $105 to this bank, and he is now estopped to deny he assumed this debt. The affirmative allegations of the bank's answer were controverted of record by agreement of parties.

In order for a party to obtain a new trial under Section 518 of the Civil Code of Practice two things must be shown: (1.) That unavoidable casualty and misfortune, which ordinary care could not guard against, prevented the person seeking a new trial from appearing in court and making a defense to the original action. (2.) A valid defense to the original action must be established. Section 521 of the Civil Code of Practice; Noe v. Davis, 171 Ky. 482, 188 S. W. 457.

The only evidence on the question of casualty and misfortune in the suit seeking a new trial is the meager testimony of McMurry. He testified he had high blood pressure which prevented him from driving a car, and that the roads were wet, hence he could not leave home to defend the suit the bank had brought against him. He did not testify to what extent he was afflicted with high blood pressure, or how it affected him, or whether he was confined to his bed, but contents himself by merely stating it prevented him from driving a car and leaving home. No member of his family, no friend or acquaintance testified concerning the extent or seriousness of his condition, nor did any doctor testify thereto. High blood pressure is a chronic, rather than an acute, condition. If we should hold a defendant with high

blood pressure, who could not drive a car on wet roads, were a victim of such casualty and misfortune as to entitle him to a new trial, without any evidence as to the extent of the high blood pressure and without any evidence as to the actual condition of the roads, few persons would regard seriously a summons to defend a suit, and there would be but slight permanence or stability in the judgments of our courts.

There was an interim of twenty-six days between the service of the summons on McMurry and the rendering of the default judgment, and he does not attempt to testify that during all this time that high blood pressure kept him at home, or that the roads were wet the entire time, nor does he attempt to show why he did not get in touch with his brother, an active attorney, to defend him in the original action. This brother resided at the county seat, eight miles away, where this suit was pending, and is representing him on this appeal. McMurry is fairly well educated and formerly taught a country school. He testified he read the summons and the notice that the bank would move for the appointment of a receiver on April 11, and that he thought the only matter involved in the litigation was the appointment of a receiver, and he did not object to this. This is persuasive to our mind and that he ignored the summons, or at least was indifferent to it, and that he relied upon his own interpretation of the papers served on him that only a receiver would be appointed. A misinterpretation of the law by a litigant affords no ground for a new trial under Section 518 of the Civil Code of Practice. Hurd v. Laurel County Board of Education, 267 Ky. 730, 103 S. W. (2d) 277.

As illustrative of the sufficiency of the evidence to establish illness amounting to unavoidable casualty and misfortune whereby a chancellor will grant a new trial under Section 518 of the Civil Code of Practice we cite Collins' Ex'rs v. Bonner, 220 Ky. 212, 294 S. W. 1027; Ohio Valley Fire & Marine Insurance Company v. Newman, 227 Ky. 554, 13 S. W. (2d) 771; Dutton v. Ward, 213 Ky. 152, 280 S. W. 942. McMurry's evidence fails to meet the requirements which these cases set out, and as we said in Barnes v. Montjoy's Adm'r, 217 Ky. 465, 290 S. W. 349, 352: ''The evidence is not sufficient to convince the court that his disability prevented him from appearing and making a defense in the original action.''

If we were not correct in our conclusion that Mc-Murry was not the victim of unavoidable casualty and misfortune, still he would not be entitled to a new trial, because he fails to establish a valid defense to the original action.

The record in the foreclosure suit brought by the Louisville Joint Stock Land Bank against T. H. McMurry and others and the record in the Royster case were made part of the record in this suit for a new trial. The only testimony offered was the deposition of T. H. McMurry taken as if upon cross examination by the bank. He testified he did not remember that he had any arrangement with Royster previous to the sale made by the master commissioner that he would pay Royster's debt, and he knew that the first mortgage of $3000 was held by the Louisville Joint Stock Land Bank, and that the Federal Land Bank of Louisville, Kentucky, had no mortgage on this land; that he understood he was paying Royster's debt and was taking the land subject to the mortgage of the Louisville Joint Stock Land Bank. He accepted a deed to this land wherein he assumed this $3000 mortgage. However, the deed does not appear in the record before us and we get this information from T. H. McMurry's petition for a new trial. After obtaining the deed to the land, he admitted exercising full ownership thereof, and of making the semi-annual payments to the Louisville Joint Stock Land Bank of $105 during the period of seven and a half years.

Turning now to the record in the Royster case we find the judgment, immediately following the description of the land ordered to be sold, recites: "This mortgage is subject to a prior mortgage executed by defendants, A. K. McMurry and wife, Porter McMurry, to the Federal Land Bank of Louisville, Kentucky, in the sum of $3,000," but the judgment did not order the land sold subject to this $3000 mortgage.

There can be no doubt that the purported sale by the master commissioner in the Royster case was erroneous, as the sale was not in conformity with the judgment. It appears Royster and T. H. McMurry must have made some prior arrangement whereby Royster was paid his second mortgage, and without the formality of a decretal sale the master commissioner accepted a writing from McMurry wherein he attempted to assume the debt of the bank, all of which the com-

missioner reported to the court, and this irregular sale was confirmed without McMurry filing any exceptions thereto. The master commissioner's report of sale contains the following:

"The land was sold, or attempted to be sold, the way it was advertised to sell but the bids as received by the commissioner was for the amount of the lien note of the Federal Land Bank, of Louisville, Kentucky, to wit: $3000.00 or better and your commissioner took from the purchaser a writing that is hereto attached and made a part hereof which sets out what was done and how it was done. This arrangement was seemingly made so that no money would come into the hands of your commissioner, therefore no fees would be paid him for distribution, and the deed that is made in this case is strictly in accordance with this report."

The writing which McMurry executed in lieu of bond and which is referred to in the report of sale is as follows:

"This land having been offered for sale on December 14, 1925, at the Court House door in Hickman, Kentucky, by the Commissioner, J. E. Melton and after same having been duly advertised, I, T. H. McMurry, having bid the full amount of the mortgage debt of the Federal Land Bank of Louisville, Kentucky, that is $3000.00, and that the plaintiff S. T. Royster, having been present at said sale, do execute this writing to the said commissioner in lieu of bond. I agree to pay all cost in this action.

'Dated at Hickman, Kentucky, this the 14th day of December, 1925.

"T. H. McMurry."

McMurry accepted a deed to this land wherein he assumed this $3000 mortgage and for seven and a half years he made semi-annual payments of $105 to the Joint Stock Land Bank. His actions brought about this irregular decretal sale and as he filed no exceptions thereto, his actions have estopped him from contending this sale was irregular and that he did not assume the bank's debt. In Young v. Venters, 229 Ky. 806, 809, 18 S. W. (2d) 277, 278, we said:

"The doctrine of equitable estoppel extends to real estate, as well as to personal estate, and is founded

on the principle that a person who has induced another to believe and act in a certain manner will not afterwards be allowed to injure or prejudice the rights of such other person, because of the acts done under the belief that they were agreed to. Stark v. Petty Brothers, 195 Ky. 445, 243 S. W. 50. The doctrine of equitable estoppel is applied to transactions where it is found that it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. Cadillac Oil & Gas Company v. Harrison, 196 Ky. 290, 244 S. W. 669.'' See Jones Colliery Company et al. v. Hall, 220 Ky. 706, 295 S. W. 1033, where many authorities on equitable estoppel are collected.

To let McMurry be the author of the irregular sale conducted by the master commissioner and to reap the benefits thereof for seven and a half years, during which time he met the semi-annual payments due the bank on its debt, and then later to allow him to deny he assumed this debt, would be most unconscionable. This is a case where the doctrine of equitable estoppel clearly applies.

We are of the opinion the chancellor erred in granting T. H. McMurry a new trial and in setting aside the default judgment against him and entering a judgment dismissing so much of the bank's petition as sought personal judgment against him. The judgment of the chancellor is reversed with direction to enter judgment in favor of the bank against T. H. McMurry for the debt and interest sued for.

Wherefore, the judgment is reversed.