**Maverick Oil and Gas Company, et al. v. Howell, et al.**

**Maverick Oil and Gas Company v. Carter, et al.**

(Decided January 20, 1922.)

### Appeals from Warren Circuit Court.

1. Pleading—Amendments.—Where an original petition and the amendment seek the same relief, asserting separate and distinct grounds therefor, the dismissal of the original petition by the court is tantamount to a denial of the relief on the ground therein set up and does not preclude the court from granting the relief sought on the distinct and separate grounds asserted in the amendment.

2. Pleading—Amendments—Election.—Under subsection 2 of section 113 of the Civil Code a pleading may contain statements of as many causes of action as there may be grounds for in behalf of the pleader, and unless the causes asserted are inconsistent the

pleader cannot be required to make an election as between them. Nor can an election be required where one of the causes is asserted in an amendment and arose subsequently to the filing of the original petition.

3.  Venue—Actions Relating to Real Property.—The venue of an action to remove a cloud on the title to real estate is fixed by subsection 1 of section 62 of the Civil Code, and the action is properly brought and maintained in the county in which the land is situated though the parties sued do not reside in that county and were not served with process therein.

4.  Appearance—Jurisdiction—Waiver.—The question of jurisdiction of the parties is waived by them when they appear and plead to the merits and the question cannot be revived on a showing that the waiver was made under a misapprehension of law or fact.

5.  Landlord and Tenant—Cancellation of Lease.—The pendency of a petition seeking the cancellation of a lease on the grounds that the terms thereof has been changed and extended after the lease was executed and delivered, does not relieve the lessee of the obligations imposed by the terms of the lease when and after the lessor has demanded of the lessee the performance of the terms of the lease, as such demand is a waiver of the matters complained of in the original petition and would necessarily estop the lessor from taking advantage of any act performed by the lessee in compliance with the demand.

6.  Mines and Minerals—Cancellation of Lease.—The failure to begin developments within four months after demand by the lessor so to do, held to be sufficient grounds for a cancellation of the lease under the facts and circumstances shown to exist, it being the policy of the law to favor cancellation of oil leases as an expeditious and effective method of protecting the interests of the lessor and accomplishing the purpose for which such leases are made.

7.  Statutes—Validating Oil and Gas Leases.—The act of the legislature of March 20, 1920 (Acts of 1920, page 110), validating and enforcing oil and gas leases, in so far as it might seem to apply to contract rights that vested previously to its passage, is inoperative because in violation of the Constitution of the United States.

WILLIAM JARVIS and ANDREW M. SEA, JR., for appellants.

G. D. MILLIKEN for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This is an appeal from a judgment in the consolidated cases of R. E. and Cora Howell against R. C. Huntsman and the Maverick Oil and Gas Company and W. S. and Nina Carter against the same defendants. The two suits were brought at the same time and, while they were

brought by the different owners of the two tracts of land, the pleadings, leases and facts are alike and present the same questions for decision. The cases were consolidated and a judgment rendered therein cancelling the leases in controversy.

In September, 1918, appellees, plaintiffs below, filed these suits, alleging that on the 10th day of January, 1917, they signed, executed and delivered to R. C. Huntsman leases on certain lands in Warren county for a period of five years, which leases were later assigned to appellant, Maverick Oil and Gas Company, and that after the execution and delivery of the leases they were changed, without the knowledge or consent of the lessors, by writing therein extensions of the term from five to ten years, and that as so changed and extended the leases cast a cloud on their titles. They asked that the leases as modified and changed be set aside, cancelled and held for naught.

No process was issued on the original petitions, but on October 18, 1919, amended petitions were filed in which certain provisions of the leases were set up and were alleged to have been violated, and on that ground the appellees prayed as in their original petitions for a cancellation of the leases. Summonses were then issued on the original petitions and served on appellant in Jefferson county, neither appellant nor R. C. Huntsman being a resident of Warren county. After filing various motions and demurrers, which were overruled, appellant and Huntsman filed separate answers denying the material averments of the petitions, and appellant further pleaded affirmatively that operations had not been commenced under the leases because of delays in receiving geological reports as to the advisability of beginning operations, and thereafter because of inability to secure drilling equipment to start the work, but averred an intention and purpose to begin drilling operations as speedily as it was possible so to do. These affirmative allegations were denied.

The right of cancellation, as alleged in the amended petitions, rested on the failure of appellant to develop the properties, according to the terms of the leases, after the giving of notice on the part of the lessors of their determination not to accept the further nominal rental provided for in the leases and of their purpose to cancel them if developments were not promptly started. This notice was given to appellant on the 17th day of June,

1919, and the amended petitions, in accordance with the purpose expressed in the notice, were filed October 18, 1919. On the submission of the cases, on their merits, the chancellor found that there had not been a compliance with the terms of the leases, in that appellant had failed to begin developments within a reasonable time after notice so to do, and rendered judgment cancelling the leases. From that judgment the Maverick Oil and Gas Company has appealed, urging various grounds for a reversal which will be discussed in the order in which they are argued by counsel.

Treating the two cases as one, for the purpose of discussing the questions raised on this appeal, we come to the first contention of appellant, which is that the lower court, having dismissed the original petition, erred in rendering judgment in favor of appellees on the amended petition. The foundation for this argument is that the original petition constituted the framework for the amendment, and the judgment dismissing the original petition carried with it a dismissal of the amendment. With that contention we cannot agree. The petition and the amendment sought the same relief, that of the cancellation of the leases, and each stated a separate and distinct ground for the cancellation, which if established by the evidence entitled the appellees to the relief sought. The two grounds might have been set up in different paragraphs of the petition, each constituting in itself sufficient cause for the relief sought, in which case the court might properly have granted the relief on one ground and denied it on the other. This is the effect of the judgment as a whole. The authorities cited by appellant on this point pertain merely to the finality of a former adjudication, or to the termination of an action by non-suit, and are inapplicable to a case such as this, where a valid cause is separately asserted in an amendment. The dismissal of the original petition was tantamount to a denial of the relief on the ground therein asserted but did not preclude the court from entering judgment on the distinct and separate ground, maintainable independently of the original petition, set up in the amendment which had as its purpose the accomplishment of the same relief sought in the original petition.

The second and third contentions of appellant proceed on the assumption that the amendment stated a cause of action inconsistent with that stated in the origi-

nal petition, and it is accordingly argued that the motions to dismiss the amendment and to require appellees to elect which cause of action they would prosecute should have been sustained.

Subsection 2 of section 113 of the Civil Code provides that, "A pleading may contain statements of as many causes of action, legal or equitable, and of as many matters of estoppel and of avoidance, legal or equitable, total or partial; and may make as many traverses; and may present as many demurrers as there may be grounds for in behalf of the pleader." The only prohibition against the number and character of causes of action that may be asserted is contained in subsection 4 of section 113, excluding inconsistencies. It has been uniformly held under this section of the Code, that as many different pleas may be made as may be shown to be true, if the proving of one does not necessarily disprove the other. (Adam Oil Co. v. Christman and Hughes, 101 Ky. 564; Sparks Jones, et al. v. Whitaker, 141 Ky. 484; Caruso v. Brown, 142 Ky. 76.)

The original petition, while admitting the execution and delivery of the lease, sought cancellation thereof on the ground that, after its execution and delivery, its term had been extended for an additional period of five years without the consent of appellees. The amendment sought a forfeiture and cancellation on the ground of violation by the holder of one of the terms of the lease. As has been stated the different grounds for this relief might have been set up in separate paragraphs of the original petition. Manifestly, therefore, there was no inconsistency between the grounds stated in the original petition and the amendment, and good pleading did not require an election as between the two. Nor was that requirement imposed by the fact that the ground on which the amendment was based arose subsequently to the filing of the original petition, for a party may amend his pleading and set up another ground for the relief originally sought, though the ground arise subsequently to the filing of the original action.

It is also contended for appellant that the court should have sustained the motion to dismiss the suit on the face of the papers because of lack of jurisdiction, neither of the defendants being a resident of Warren county and neither of them having been served with process in that county. On that point, it is said that the venue is con-

trolled by section 78 of the Civil Code and the action, therefore, was not maintainable in a county in which neither of the defendants resided.

This position cannot be maintained under our view of the law. The action was not transitory but one the venue of which was fixed by subsection 1 of section 62 of the Civil Code. The appellees sought to remove the cloud which the leases as changed threw on their land and so stated in their petition. The land was situated in Warren county and the Warren circuit court manifestly had jurisdiction of the action. (Landrum v. Farmer, 7 Bush 46.) But even if that question were debatable, as an original proposition, it is not available here because it was waived by the filing of various motions, demurrers and answers before any attempt was made to raise it. (McDowell v. Chesapeake & Ohio Railroad Co., 90 Ky. 346.) Nor could it be revived by a showing that the waiver was made under a misapprehension of law or fact.

It is earnestly argued for appellant that a cancellation of the leases on the ground of non-development, as alleged in the amended petition, was inequitable, because appellant could not be required to develop the property during the pendency of the original petition. It may be conceded that the authorities cited on this point lay down a general rule that is sound, viz.: that where one of the parties to a contract before the time of its performance or in the course of its performance makes performance impossible the other party is not to be held liable for a failure to carry out the contract. But that case is not presented here, and the force of appellant's argument on this point is lost when it is considered that after the filing of the original petition, the appellees demanded of appellant that it perform the contract by beginning developments and gave notice of their purpose, in the event of further failure, to exercise their right of cancelling the leases. This notice was itself a waiver of the matters complained of in the original petition. It was such an act on the part of appellees as thereafter would necessarily estop them from prosecuting the claims asserted in the original petition and from taking advantage of any act performed by appellant in compliance with the demands of the notice. This being true, the requirements of the leases were not suspended, after the giving of the notice, and non-performance could not be justified on the ground of uncertainty as to appellant's rights.

Appellant also insists that the four months, which elapsed after the giving of notice by appellees, was not a reasonable time within which to begin developments, and that the cancellation of the leases, on the ground of failure to begin developments within a reasonable time after notice so to do, was error.

The leases were dated January 10, 1917. They contained the usual provision that in case a well was not completed within one year from that date the grant should become null and void as to both parties, but with the further proviso that the lessee might prevent a forfeiture by depositing a check, payable to the order of the lessor on or before the day payment was to be made by the terms of the lease, addressed to the lessor at Bowling Green, Kentucky, for $1.00, or deposit that sum to his credit in the Citizens National Bank, Bowling Green, Kentucky, for each additional three months until such well should be completed, it being understood that if the payments were made until the completion of the well the grant should remain in full force and effect.

The evidence shows that no well had been commenced on June 17, 1919, when the written demand was made by appellees for performance of the covenants of the leases, with notice that on the failure of appellant to begin developments, within a reasonable time, with the view of fulfilling the terms of the leases, a cancellation would be sought.

It is unnecessary to elaborate the policy of the law in this jurisdiction with reference to the right of enforcing performance of the terms of leases of this kind, or the alternative remedy of cancelling the lease in event of nonperformance thereof by the lessee. It is sufficient to say that this court has repeatedly held that it is the duty of the lessee, when the one year period has expired, to begin developments within a reasonable time after demand therefor has been made by the lessor, and in the event of breach of that duty the law will favor forfeiture or cancellation as an expeditious and effective remedy for the lessor. This remedy is considered necessary because of the fluctuating and uncertain value of this class of property and of the importance of a speedy development of it in order to protect the interests of the lessor and to accomplish the purpose for which such leases are made. (Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602; Soaper v. King, 167 Ky. 121; Dinsmoor v. Combs,

177 Ky. 740; Hughes v. Busseyville Oil and Gas Co., 180 Ky. 545; Warren Oil and Gas Co., et al. v. Gilliam, 182 Ky. 807.)

It is, of course, incumbent upon the lessor to make demand on the lessee to develop the property within a reasonable time, and thereafter, developments must be started within such time or a cancellation will be decreed. In determining what is a reasonable time every case must be controlled by the facts proved in that particular case. Where it appears that the holder of a lease is holding it purely for speculative purposes, the time for development after notice must necessarily be shorter than where it is shown that the holder in good faith intends to develop but is temporarily delayed in carrying out his intention.

The evidence in this case shows that failure to begin drilling was not due to inability to obtain equipment or to any physical obstacle; that during the four months that elapsed after the giving of notice and before the filing of these suits, appellant was actually engaged in drilling on other property and could have obtained equipment and machinery for developing these properties. The reason for not beginning within that time is disclosed in the evidence of appellant's field manager, from which it appears that he did not consider it advisable to begin developments within that period because he considered the two leases in controversy the least desirable, for operative purposes, of all those held by appellant. There is also evidence to show that appellant was then in financial straits and that funds for the development of these properties were not available but would have to be raised, if they were raised, by the sale of stock in the company. In view of these circumstances it cannot be concluded that there was any definite prospect of development on the properties in controversy. On the contrary, it seemed quite probable that appellant would never begin drilling; certainly there was no visible prospect of a development within a reasonable time. Under this state of facts we cannot say that the court below erred in decreeing a cancellation on the ground of the failure of appellant to begin developments within a reasonable time, or that the four months that elapsed after the demand was made was not sufficiently reasonable.

The judgment is finally attacked on the ground that the facts in this case bring it within the operation of the act of the legislature of March, 1920 (Acts 1920, page

110), validating and enforcing oil and gas leases. The language of the act relied on is embraced in section 2 thereof and provides:

"That all valid, existing or future contracts and leases for oil and gas rights upon or under the lands of this Commonwealth, wherein by their terms a rental clause is provided in event of failure to drill for oil or gas within a given period, are hereby validated and declared to be, and shall be, construed by the courts of this Commonwealth enforcible and binding contracts according to the terms thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease contract."

It is said that the language quoted is retroactive, and, although the leases in controversy were executed previously to the enactment of this statute and these actions instituted before the statute became effective, the act reaches back and attaches itself to the rights that had vested under these leases and destroys the right thereunder to maintain an action for forfeiture and cancellation.

Granting the accuracy of the assertion that the act is plainly retroactive in intent, the question arises as to whether it can be constitutionally applied to the cases under consideration. In affirming the validity of such an application, appellant cites a number of authorities in which retroactive legislation has been sustained. A separate analysis of these authorities is unnecessary as it is obviously true that state statutes plainly meant to be retroactive are not on that account to be vitiated, but must be upheld unless their application to a given subject brings them in conflict with some constitutional prohibition, in which case they are necessarily inoperative. The authorities cited clearly define the line of demarcation between the application of a retroactive statute to statutory remedies and to rights that have vested under an existing contract, and this court has never held that the legislature had power to enact a law which would impair the obligation of an existing and valid contract or destroy rights that had vested under such a contract.

Speaking of constitutional inhibitions against such legislation, this court in Henderson and Nashville Railroad Company v. Dickerson, 17 B. Monroe 173, said:

"Retroactive legislation is not prohibited by any of the provisions contained in either of the Constitutions (referring to federal and state). Where it affects or impairs the obligations of a contract it is prohibited."

Article 1, section 10, of the Constitution of the United States expressly prohibits a state from passing any law impairing the obligations of a contract, and in Von Hoffman v. City of Quincy, 4 Wall. 535, it was said:

"It is competent for the states to change the form of the remedy or to modify it otherwise as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy which are to be deemed legitimate and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced the act is within the prohibition of the Constitution and to that extent void."

It is settled by the adjudications of the Supreme Court that the obligations of a contract are impaired, within the meaning of the Constitution, by an act which prevents the enforcement of the contract or which materially abridges the remedy for enforcing it, which existed at the time the contract was made, and does not supply an alternative remedy equally adequate and efficacious. (Woodruff v. Trapnall, 10 Howard 190; Forman v. Nichols, 8 Wall. 44; Walker v. Whitesides, 16 Wall. 314; Howard v. Bugbee, 24 How. 461; Tenn v. Sneed, 96 U. S. 69; Memphis v. U. S. 97 U. S. 293.)

Thus it will be seen that the general rule that retroactive statutes should be given a liberal construction, where there is a clear retroactive meaning and intent, is restricted by the constitutional inhibition against the passing of any law by a state that impairs the obligation of an existing contract. The force of the inhibition is even more compelling where the legislation does not purport to alter or change an existing remedy but is directed towards and acts upon existing rights. The policy of the law in this state, with reference to leases of this kind, was well settled at the time these leases were executed and delivered. The main purpose of the leases was to induce speedy development and thus enable the lessors to utilize the values of their property. As an incentive to this development there existed the available power of

cancellation. This, perhaps, was the most valuable right pertaining to the lessor's contract, without which it cannot be assumed that such a lease would be executed. The right vested and the judicial enforcement thereof was sought previously to the enactment of the law in question. The statute attempts to attach itself to this vested and matured right, and, if lawfully applicable, must be held to destroy it. This it cannot do. We conclude, therefore, that, in so far as the act by its terms might seem to apply to the facts in this case, it is inoperative because in violation of the Federal Constitution.

Perceiving no error in the judgment of the court below it is affirmed.