## Warfield Natural Gas Company v. Ward.

(Decided June 10, 1932.)

KIRK & WELLS for appellant.

JOHN T. DIEDERICH, W. R. McCOY, and C. B. WHEELER, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Appellee, Fanny E. Ward, owned a tract of 98½ acres of land in Martin county on which the Warfield Natural Gas Company held a lease for oil and gas. The lease was dated April 1, 1907, and by its terms was to remain in force for a term of thirty years from date, with the right to renew under same conditions for a similar or longer period or as long thereafter as oil or gas was produced thereon. The lessee was to pay an annual rental of 22½ cents per acre to be paid quarterly in advance. The lessee paid the annual rental regularly. On April 13, 1925, appellee served on appellant a written notice, the material part of which was in these words:

"This is to notify you that the said Fanny Ward desires that said lease be developed for Oil and Gas purposes, as provided in said lease, and you are notified to commence development thereon at once, or as soon as is practical and to continue the development thereof until completed, otherwise she will after the expiration of a reasonable time for such development and none having been commenced proceed to bring an action to forfeit said lease in so far as it refers to her land herein described.

"She says that a reasonable time for such development is not longer than four (4) months from this date, and she will expect same to be commenced in good faith within that time."

She refused to accept the rentals after this. On July 13, 1925, the gas company sent its engineer upon the land to make a survey and locate the point where the well should be put down. The land was rough and hilly and a road had to be dug from the county road to get into it with the timbers. On August 8, 1925, after the well had been located and the road constructed, the gas company began to put timbers on the ground for the construction of the derrick. It began the derrick in Septem-

ber, 1925, and completed it October 12, 1925. On December 4, 1925, the drilling equipment was put on the ground. On January 8, 1926, drilling was begun, and on February 2, 1926, as shown by appellee, she wrote appellant a letter, stating in substance that appellant was a trespasser on the land and notifying it to stop drilling thereon and get off the land. The letter, as shown by the proof for the appellee, was mailed at Huntington, W. Va., properly addressed with the return notice on it, and was never returned. According to the proof for the appellant the letter was never received. The well was brought in on February 10, and proved a fine producer. The appellant spent in digging the well $6,825.51. Appellee lived in Inez. The gas company kept an office there and some of its officers lived there and saw appellee frequently. Her brother, who was her agent in the matter, lived near the land, and, according to the proof for appellant, both she and her brother knew all that had been taken place after the notice was given in April, 1925. Each of them knew that the derrick had been moved to the land, that the road had been built and of the progress of the work as it went on, and made no objection until this suit was brought on March 12, 1926, to oust appellant from the property and obtain possession of the well. Appellant by its answer pleaded the above facts as an estoppel on appellee to maintain that the lease was forfeited, as she had stood by and allowed it to make the large expenditure indicated without then objecting or relying on the forfeiture of the lease. By an amended petition, filed during the action, appellee alleged that her part of the gas withdrawn by appellant was of value $5,025. On final hearing, October 5, 1930, the circuit court gave judgment, in effect forfeiting the lease, but allowing appellant to hold the well and 50 acres of land around it and requiring it to pay appellee $5,025 for one-eighth of the oil withdrawn up to that time. From this judgment the gas company appeals.

In Swiss Oil Co. v. Howell, 199 Ky. 763, 251 S. W. 1007, 1008, the court thus stated the rule in such cases:

"We have held, in many cases, that a failure to develop within a reasonable time after refusal to accept rentals and notice that development is demanded furnishes ground for a cancellation of such a lease. . . .

"We have never attempted, however, to say just what is a reasonable time, but have held that to be a question determinable upon the facts of each particular case. Maverick Oil & Gas Co. v. Howell, 193 Ky. 433, 237 S. W. 40; United Fuel Gas Co. v. Adams, 198 Ky. 283, 248 S. W. 841." To same effect see Mid-South Oil Co. v. Jaynes, 208 Ky. 483, 271 S. W. 553.

Whether here a reasonable time had elapsed before the work was done, in view of the scarcity of water during the fall of 1925 and the other facts shown, the court finds it unnecessary to determine, as it is clearly of the opinion that appellee is estopped under the facts shown to maintain that the lease was forfeited when she undertook to do so by the letter of February 2, 1926.

"The doctrine of equitable estoppel is generally applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he had acquiesced or of which he has accepted any benefit. 10 R. C. L., p. 694." Cadillac Oil & Gas Co. v. Harrison, 196 Ky. 294, 244 S. W. 669, 671.

Forfeitures are not favored. A forfeiture will never be adjudged when upon equitable principles this would be unjust. It took a considerable amount of money to build the road, move the derrick, put it up, and get the drilling rig and tools to the property. It cost appellant in all $6,825.51 to drill the well. Appellee could not stand by and allow appellant to expend this money without objection and then maintain that the lease was forfeited. It was incumbent on her, if she wished to insist on this right, to speak promptly, and she waived her rights when she let the appellant go on and dig the well. It took about a month to put down such a well. This was well known in the vicinity from the time it had taken to dig the other wells. She could not wait until about the time the well would be completed to give notice. From all the facts it could be reasonably anticipated that the well would be completed about the time the letter would be delivered to appellant in the ordinary course of events. Under such circumstances the appellant waived her right to insist on the forfeiture of the lease. The lease is valid, and the rights of the parties must be determined under its terms.

440

Judgment reversed, and cause remanded for a judgment dismissing appellee's petition in so far as it sought a forfeiture of the lease.

Whole court sitting, except Judge WILLIS not sitting.