## Case v. Stacey et al.

Sept. 27, 1940.

Sanders E. Clay, Special Judge.

Stratton & Stephenson for appellant.

J. E. Childers for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Prior to his death in 1934, A. J. Case, father of appellant, owned a large tract of land in Pike County. On November 25, 1925, he conveyed to C. B. Davis certain timber on the tract. So much of the instrument as is pertinent to the controversy recites that the vendee should have a "period of five years in which to remove said timber, also the right to extend the right of removal from year to year, for $100 per year in excess of the five years from the date of this conveyance."

On November 5, 1932, A. J. Case conveyed to appellant a boundary of about 100 acres of the tract. In the deed to the son the timber conveyed to Davis was excepted, but it was recited that the son should be entitled to royalty to the amount of $15 per year for "said timber, minerals and mineral rights, as mentioned in the deed to C. B. Davis." This tract is referred to in pleadings as "No. 1."

A. J. Case died August 12, 1934, survived by his widow, appellant and three other children, who, in March, 1935, executed deeds of partition, in one conveying to appellant a tract (No. 2) estimated at about 60 acres, both being in possession of appellant at the time he instituted his suit, May 14, 1937, in which he named as defendants, appellees Stacey, and Curry, who had succeeded to the timber rights under the Davis deed, and were then removing timber from appellant's boundaries.

He set out in detail the various transactions, his ownership and possession, and the terms and conditions of the two deeds, and charged that defendants had been cutting and removing timber for several years past, and were still so engaged; that they had failed to pay him

any portion of the royalty for the delay in removing timber for the period following the five years after the date of the deed, and that, therefore, the right to remove timber from his tracts was forfeited.

He also claimed that since November, 1935, Curry, prior to Stacey's entry, had cut and removed timber of the value of $300, and in doing so had done injury to his lands, fencing and crops, to the extent of $150, and that Stacey had later cut and removed timber to a like amount, and had caused like damage. So much of the pleading as sought money recovery against Curry was later dismissed without prejudice, and, as the case progressed, it is manifest that the matter of money judgment is not here involved.

There is no contention between parties as to the title to any of the land in question, or as to the rights conveyed by the Davis deed. Issues were raised by appropriate pleadings, and appellee sought in his prayer a money judgment on account of alleged damages, a forfeiture of the rights under the Davis deed, and a perpetual injunction.

Curry and Stacey admit appellant's ownership and possession of the two tracts in question, but plead full payments in the delay rentals, year by year. It is admitted that they paid, in accordance with the provision of the Davis deed, the per year rental to A. J. Case, from November 27, 1930, the date when delayed rentals were to begin, payable in advance, until the date of his death, and after the appointment of an administrator same were paid to him for a time, and at other times to the widow and heirs.

They say Emmitt Case was a son, and also administrator of the estate, and payment to him was payment to all the interested parties. They expressed ability and willingness to continue to pay delay rentals into court for distribution, pending the outcome of the controversy.

The chancellor had incorporated in the record a comprehensive opinion, which, after reciting the pleadings and pertinent proof, suggested that the action was one ''seeking a forfeiture of the right of extension of time to remove timber by reason of failure to pay plain-

tiff his proportionate share of the $100 per year rental, according to the amount of the original timbered tract owned by him." The court then turned the case in this wise:

"It is admitted that Curry, who is the remote grantee of Davis, has paid the $100 installment to the administrator, and that the payments were made in the proper time. However, it is contended that because plaintiff was not paid anything by Curry, the remote grantee of Davis, for the portion of the original timbered tract that he owned, the right to extend the five year period for removing the timber, ceased, and that Curry had no authority to go upon that part of the original tract which plaintiff owned, and remove timber therefrom.

"Emmitt Case is the administrator of the estate of A. J. Case, deceased, and as such was not entitled to receive the $100 timber rental, except such amount as was due at the time of the death of A. J. Case. However, Emmitt Case is also one of the heirs, a son of A. J. Case, and inherited a portion of the original tract; while it is recited that the rental was paid to him as such, the court feels that it should be treated as if it had been paid to him as son, and one of the heirs of deceased, and an owner of part of the original tract. The court further holds that all of the children of deceased who inherited any portion of the original tract, after the conveyance of November 25, 1925, as well as any purchaser of a portion thereof, after said date, whether divided or undivided, took that portion either by inheritance or purchase, subject to and burdened with the obligation of A. J. Case created by the conveyance of November 1925, and that each of them was a joint obligor. * * * Such being the case, under the authority of Stacy v. Reams, 221 Ky. 573, 299 S. W. 193, 194, this court is of the opinion that Emmitt was a joint obligor with plaintiff, under the timber conveyance, and payment to Emmitt by the grantee, was a payment to all joint obligors, and, therefore, such payment extended the privileges granted by him so long as the $100 per year was reasonably made to one of the joint obligors, that is, of removing the timber from the

tract of land in question. It is, therefore, considered by the court that plaintiffs' petition should be, and same is, dismissed.''

Judgment in conformity with the opinion was entered, and appeal followed. As we read the briefs, it appears to be admitted that the only question before this court is whether or not appellant was entitled to a decree of forfeiture.

Counsel for appellees stand squarely on the conclusion expressed by the chancellor, above recited. Counsel for appellant, while admitting the payment to one joint obligor is payment to all obligors, undertakes to distinguish the Stacy-Reams case from the one at bar. The distinction pointed to is that in the Reams case it appeared that Stacey had conveyed parts of a 630-acre tract to some of his children, and on the same date he and his children conveyed all timber on the tracts to Reams, who had later tendered payment to the father— the tender being rejected—and parties refusing Reams the privilege of removing timber under the contract. Reams sued the grantors, seeking to enjoin them from interfering with his right to cut and remove the timber. It was shown that Reams had tendered payment to the father, and we held this to be sufficient tender to all grantees, because:

"* * * their undertakings in the deed were joint. The instrument did not disclose upon what particular parts of the land the trees, or any proportion of them, were situated, and it would have been wholly impractical, therefore, for the tender to have been made to the several grantors in the proportions that the timber sold was situated upon their several different tracts.''

In the instant case, no title to the timber passed to the appellant. There is only one of the inter-parties' deeds exhibited, and this makes no reference to exceptions. Nonetheless, the parties could not convey any greater estate than they had inherited from the father. None of the parties took title to the standing timber, and the same, until severed, was a part of the real estate. It is not disputed that Davis took fee in the timber, subject to the payment of rentals.

Appellant insists that the above case has no appli-

cation here, because those who finally became the owners of the land had not, as in that Stacy case, been parties to the original deed. The Reams case apparently has not been cited in any subsequent opinion of this court, but it finds some support in Morrow's Heirs v. Starke's Adm'r, 4 J. J. March 367; Shelby v. Shelby, 212 Ky. 552, 279 S. W. 942.

We need not spend further time in undertaking to follow the distinction undertaken by appellant, nor its application, further than to say that here, in case of a forfeiture or abandonment of the rights of Davis' vendee, the timber on the entire tract would revert to the estate of A. J. Case, and under such circumstances, all the heirs-at-law, and the widow, became the owners thereof, jointly. However, it is not necessary to discuss the question, since there are other facts and circumstances which militate against forfeiture.

At the outset we may say that forfeitures are not looked upon with favor. The grounds upon which forfeiture is allowed should be well established. It is the general rule that forfeiture should not be declared, when upon equitable principles injustice would result. Cadillac Oil Co. v. Harrison, 196 Ky. 290, 244 S. W. 669; Warfield Gas Co. v. Ward, 244 Ky. 436, 51 S. W. (2d) 256; Roberts et al. v. Babb, 282 Ky. 151, 137 S. W. (2d) 1112.

The undisputed facts are that the deed from Case to Davis was made on November 25, 1925; that the five years for removing timber, without payment of rental, expired November 26, 1930; rental was to be paid in advance, and the rental for 1931 was to be paid on or about November 26, 1930. Further, that A. J. Case was paid the yearly rental up to the date of his death, August, 1934; the rental for 1935 was due to be paid in November, 1934. This rental was paid under an unchallenged arrangement, $25 to a son-in-law of A. J. Case; $25 to the widow, and the remaining $50 was paid to the four children, $12.50 each, appellant receipting for his one-fourth, complaining that it was not adequate payment. Emmitt was appointed administrator in November, 1935, at which time a payment was due for the year 1936. For the years 1936 and 1937, under advice of counsel, Curry paid each year to a son-in-law, $25, the remaining $75 to the administrator. In November, 1937, presum-

ably for 1938, Emmitt having ceased to function as administrator, Curry paid Williamson $25, without objection from any of the heirs, tendering appellant $12.50, which was refused. It seems that later Curry mailed appellant a check for $27, which appellant returned.

The tender of $27 was brought about in this way: Under the deed from A. J. Case to appellant, November 5, 1932, it was provided that General Case should be entitled to $15 per year for said timber and mineral rights excepted as in the Davis deed. This was not an obligation of either Davis or Curry, but merely an obligation on the part of the vendor that appellant should be entitled to $15 of the yearly rentals, representing the portion he should receive on Tract No. 1.

It came out in proof, and there is little dispute on the point, that there had been some sort of trade between father and son entailing a difference in value of $75 in favor of the father, and by a writing (not produced, though i: the hands of appellant) the son was to waive the payment of the $15 rental set up in his deed, until the $75 was paid; that is, from November 5, 1932, until November 5, 1937, so there was nothing due from Curry to appellant on rentals on Tract No. 1. This contract apparently expired in November, 1937.

Nowhere in the pleading or proof does appellant express his idea as to the amount he should have received as his portion, or that he ever demanded what he thought was his proportion of the $100 yearly rental. The only theory upon which he can base his claim is that the $12.50 paid and tendered him was inadequate, and that he is entitled to forfeiture on that ground, and because for two years Curry paid the personal representative, who did not pay appellant. He points to the case of United States F. & G. Co. v. Joseph W. Russell & Co., 141 Ky. 601, 133 S. W. 572, and quotes:

> "The land and all that passes with the land passes at his death to his heirs, or, if he disposes of it by will, to his devisee. Unless the land is devised to the executor, he has nothing to do with it. His sureties are not liable for rents."

The above case cites former cases embodying the principle. A number of cases might have been cited to

the same effect, but here it is not sought to hold a surety liable for collected and misapplied rentals.

We have been cited to no case by appellant which would indicate that the personal representative might not be held liable, nor to any case which holds that the widow and heirs-at-law would not be required to pay appellant a proportion of the rentals to which he might have been justly entitled. There is no claim that the collector or those receiving the rentals were at any time insolvent. As to the liability of the personal representative, see Wilson, Guardian v. Unselt's Adm'r, 12 Bush 215, 218; Smith v. Bland, 7 B. Mon. 21.

In Denton v. Crouch, 101 Ky. 386, 41 S. W. 277, 278, 19 Ky. Law Rep. 588, a question somewhat similar was being considered, wherein the administrator had collected accruing rents after the death of his intestate, and disbursed same to creditors of the estate, and in paying costs of administration; we said:

"This was a misappropriation of funds belonging to the widow and heir, for which he was responsible to them as their agent or trustee." Citing the Wilson and Smith cases, supra.

In the instant case it appears that Emmitt qualified as administrator so that he could protect certain creditors. He only collected in the two years, $150, out of which he paid debts, taxes due on the real estate, and no doubt the costs of administration. These facts are not disputed.

We are of the opinion that since the burden was on appellant to show grounds for forfeiture, and he has totally failed therein, it would be inequitable to decree a forfeiture as to the timber on his tract or tracts of land. Hence we conclude that the chancellor was correct in denying same and in dismissing his petition.

Judgment affirmed.