## Tenner v. Carmack et al.

June 23, 1944.

Shumate & Shumate for appellants.

H. L. Rudd and Moss Noble for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This appeal is from a judgment cancelling the fractional interests of the seven appellants, aggregating 18/32, in certain oil and gas leases on a finding by the chancellor that their assignor, one Estes, to whom the appellees, the owners of the leases, had transferred all but a 1/16 interest, had failed to complete the first, or test well, which undertaking was the consideration for the transfer from appellees to Estes.

The contract between Estes and appellees, who had apparently acquired the leases for speculative purposes, is as follows, with the exception of the signatures and certificate of acknowledgment which we have omitted:

"This contract made and entered into this the 30th day of August, 1941, by and between H. C. Barrett, and A. J. Carmack, of Booneville, P. O. Owsley County, Kentucky, parties of the first part, and Jasper Estes, of Beattyville, P. O. Lee County, Kentucky, party of the second part.

"Witnesseth: That for and in consideration of the following leases, to wit: A. J. Carmack to H. C. Barrett, Logan Burch to H. C. Barrett, A. Carmack to H. C. Barrett, Lucian Burch to H. C. Barrett, and Frank Bowman to A. J. Carmack, Isaac Burch to A. J. Carmack, Wendell D. Carmack to A. J. Carmack, D. B. Moore to A. J. Carmack, Bertha Thomas to A. J. Carmack, and J. C. Roberts to A. J. Carmack to above leases are all located in Owsley County, waters of Island Creek, waters of the South fork of the Kentucky River, this date transferred and assigned to the party of the second part the above named leases conditioned as follows: The said party of the second part agrees to drill an oil well on any one of the herein mentioned leases, and bind himself to commence operation on or before September 6th, 1941, and to continue operations on said leases until a well is completed and it is mutually agreed by the parties hereto that no expense for the drilling of the said first well is to be incurred by the parties of the first part herein, but as a part of this consideration of this contract the parties of the first part reserve unto themselves a one-sixteenth interest (a one-thirty second part

each) in all of the above named leases. The said parties of the first part agree to pay their proportionate part of all other drilling of other wells after the completion of the said first well, and to receive the above stated share of all the oil and gas which may be taken from the above named leases."

According to the proof, Estes began drilling about September 1, 1941, and continued the operation, with interruptions, until about September 1, 1943, when, having reached a depth of approximately 1,365 feet, he announced that he had missed the sand and would not drill any further. However, for a substantial monetary consideration paid him by the appellant, J. B. Jones, Sr., he was induced to drill further, and on September 22, 1943, at a depth of 1,410 feet, he penetrated the oil sands. Oil rose in the well, and apparently, all of the interested parties were convinced that a valuable well had been brought in. Whether the drilling was then discontinued with the approval of appellees, as appellants contend, because it was thought that the well should be "put on the pump," rather than drilled further with the attendant risk of flooding the well with salt water and thus ruining it, or whether the failure to proceed with the development was occasioned by inability or unwillingness on the part of the appellants to procure the necessary equipment, is not clear. In any event, appellees seem to have concluded to avail themselves of the delay which ensued as a means of acquiring not only the remaining interest of Estes in the leases but the shares of the appellants who had purchased from him, and to that end, on December 4, 1943, instituted this action against Estes and the appellants in which they alleged that Estes had failed to complete the well in accordance with his contract; that the appellants had acquired their interests with knowledge of the terms of the contract; that appellees were entitled to a forfeiture of the interests of Estes and the appellants, and to recover $20,000 damages from Estes, for all of which relief they prayed. On December 28th, the court appointed a receiver for the property, and on February 5, 1944, entered an order reciting that by agreement between appellees and Estes, his interest in the leases was cancelled and the action, as to him, dismissed settled. Various defenses were interposed and the issues joined. Whereupon, after hearing proof oral-

ly, the court entered a judgment cancelling all of the interests of the appellants in the leases.

We do not agree with the chancellor that the controlling factor in determining the rights of the parties was the alleged failure of Estes to complete the well. Even if we should construe the contract between appellees and Estes as a grant of an estate subject to be defeated by the breach of a condition subsequent rather than as a grant of an absolute estate with a covenant annexed, for the breach of which, appellees would be entitled merely to recover damages, we would, nevertheless, be justified in refusing to sanction a forfeiture, if such a decree would be inequitable, especially, if it wrought injury to those with whom appellees had so dealt as to induce a belief that their interests acquired under the grant were vested. As to the character of the grant, see Amer. Juris., vol. 19, Estates, sec. 65, p. 527, sec. 69, p. 534, 535. As to the waiver of the right to forfeiture, see same work and title, sec. 41, p. 552; Amer. Juris., vol. 24, Gas and Oil, sec. 76, p. 584, 585; Warfield Natural Gas Co. v. Ward, 244 Ky. 436, 51 S. W. 2d 256; Thornton on Oil and Gas (Willis) Section 276 Supp.; Cadillac Oil & Gas Co. v. Harrison et al., 196 Ky. 290, 244 S. W. 669.

The dates on which the appellants acquired their respective interests, varying from an undivided 1/64 to an undivided 1/8, are not shown, but it does appear that the appellant, Jones, Sr., a resident of Knoxville, Tennessee, visited the appellees shortly after they had made their contract with Estes, and only a little later completed his purchase from Estes. The appellant, Lett, as nearly as we can gather from the evidence, made his investment only a few days before oil was struck at a depth of 1,410 feet; and the other appellants apparently acquired their interests between the date that Jones, Sr., acquired his, and September 1, 1943. However this may be, there is no dispute of the fact that appellees failed to take any action to enforce their alleged right of forfeiture when Estes, on or about September 1, 1943, announced that he was through. On the contrary, with full knowledge of appellants' claims, they stood by and permitted one or more of them to pay Estes to resume the drilling.

There is respectable authority to the effect that the drilling of an oil well is completed when the oil-bearing

sands have been penetrated. Kies et al. v. Williams et al., 190 Ky. 596, 228 S. W. 40; Thornton on Oil and Gas (Willis), Section 1282. But even if this were not so, and we should agree with the chancellor that Estes did not complete his contract and acted in bad faith throughout, and that his interest in the leases was only conditionally vested, and hence, subject to forfeiture, we would, nevertheless, be unable to find any justification for the chancellor's judgment depriving appellants of their interests. True, they purchased from Estes with full knowledge of his contract with appellees, but appellees with full knowledge of the facts permitted them to invest substantial sums to bring the enterprise to a successful conclusion after Estes had defaulted. Appellees, having reacquired all of Estes outstanding interests in the leases by dismissing as settled their claim for damages against him for breach of covenant, certainly cannot be said to have sustained a loss. On the contrary, they are in a position to profit largely as a result, in no inconsiderable degree, of appellants' investments. Indeed, it would be difficult to conceive of a case in which to enforce even a clear right of forfeiture would be more inequitable, or in which those claiming such a right could have more effectually estopped themselves from seeking aid of a court of equity.

Judgment reversed.