## Perros v. Stone's Adm'r et al.

April 25, 1947.

Rehearing denied June 6, 1947.

K. S. Alcorn, Judge.

E. C. Newlin and Clay & Clay for appellant.

Nelson D. Rodes, Chenault Huguely and Joe G. Davis for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Affirming.

Prior to April 14, 1945, Mike S. Perros owned and operated a restaurant in Danville, Kentucky. By a written contract dated April 14, 1945, he sold the business to Joe B. Stone and Dan Vandenburg for $7,000, of which $1,000 was paid in cash. $6,000 was to be paid in monthly installments of not less than $150 each, beginning on May 15, 1945, and the purchasers executed a chattel mortgage on the restaurant fixtures to secure this unpaid balance. It appears that more than $5,000 of the purchase price was for the good will of the business, since the value of the tangible property embraced in the sale was less than $2,000. The contract provided that if any monthly payment was not made to the seller within thirty days after such payment became due, then "at the option of the party of the first part he may declare all of the remaining indebtedness due and may take possession of the premises and operate the business as his own and the part paid treated as liquidated damages and the remainder cancelled." The contract then provided:

"At any time before the indebtedness herein assumed by the parties of the second part is paid to the party of the first part, should the parties of the second part desire to discontinue their business and to sell it, the party of the first part is given the option first to repurchase the business and equipment herein sold for an amount of not more than the consideration herein recited, but the offer by the parties of the second part must be accepted by the party of the first part within

thirty (30) days, otherwise the parties of the second part may sell to whom they choose, providing the party of the first part is paid all of the indebtedness herein assumed by parties of the second part, but if the indebtedness herein assumed is all paid the party of the first part is given the option first to re-purchase the business if he so desires at a price agreed upon by the parties of the second part.''

In clause 5 of the contract the seller agreed not to engage in the restaurant business in Danville so long as the indebtedness due him remained unpaid. Clause 6 of the contract read:

''In the event that either of the second parties or their personal representatives desire to sell the interest which either has under this contract, he may do so but the obligation to the first party herein is not released.''

On June 19, 1945, Vandenburg sold his interest in the restaurant to Joe B. Stone for $2,748.88 cash, and Stone assumed the payment of the balance due Perros on the purchase of the restaurant. Joe B. Stone died intestate on November 8, 1945, and his brother, Fred F. Stone, qualified as the administrator of the estate. Joe B. Stone left surviving him his widow, Mary Lee Stone, and a sixteen year old daughter, Jorene Stone. Mary Lee Stone is the guardian of her infant daughter, Jorene Stone. The administrator operated the restaurant until December 8, 1945, when he sold and transferred the fixtures and equipment to Mary Lee Stone, widow of Joe B. Stone, for $1,710.38, their appraised value. On January 18, 1946, Mike S. Perros presented to the administrator of Joe B. Stone's estate written proof of his claim against the estate for $4,800, the balance owing him on December 15, 1945, on the $6,000 purchase money note, and also demanded of the administrator that the restaurant business be returned to him. On April 11, 1946, the administrator brought this action for the settlement of the estate. Mike S. Perros and Joe B. Stone's widow and infant daughter, and the latter's guardian, were made defendants.

The principal issue made by the pleadings was whether or not the sale of the restaurant business by the administrator to the widow of Joe B. Stone without first offering to sell it to Perros was a violation of the

contract of sale between Perros and Stone and Vandenburg. Perros filed a pleading styled "Answer and Cross-Petition." In the prayer he asked that the court adjudge the sale of December 8, 1945, to the widow and the assignment of the lease to be in violation of the terms of the contract, the note, and the mortgage; for a judgment against the administrator in the sum of $4,800, with interest thereon from November 8, 1945, subject to credit for such monthly payments as had been made since that date; for an accounting of the returns, issues, and profits of the business from and after December 8, 1945; and that he be adjudged entitled to the possession of the restaurant as of December 8, 1945. He did not allege that he was ready and willing to pay Stone's estate the $7,000 purchase price less the payments that had been made on the note. In an amended petition the administrator alleged that he had tendered to Perros $4,050, the full amount of the balance due on the $6,000 note, and that Perros had refused to accept it. On June 6, 1946, the chancellor adjudged, pursuant to a written opinion which he had prepared, that Perros recover of the administrator $4,050, the balance due on the purchase money note, and that Perros was not entitled to take possession of the restaurant owned by Mrs. Mary Lee Stone. After the chancellor had read his written opinion and announced his decision, Perros prepared and offered to file an amended answer and cross-petition in which he alleged that if the restaurant business had been offered to him after the death of Joe B. Stone, he was at all times ready and willing to buy the same under the terms of the contract of sale. The chancellor sustained an objection to the filing of the pleading on the ground that it came too late. The case was submitted on the pleadings and exhibits, and we think the chancellor correctly held that it was incumbent on Perros to allege and show that he was ready and willing to pay for the restaurant business the amount stipulated in the contract and would have exercised the option to repurchase the business if he had been given the opportunity of doing so, and, having failed in this respect, he was not entitled to be adjudged the right to possession of the business. In his answer and cross-petition he alleged a breach of the provisions of the contract, note and mortgage, and prayed for a judgment against the adminis-

trator for the balance due on the note. As pointed out in the chancellor's opinion, the provision of the mortgage which appellant claims was violated was not intended to prohibit the sale of the business, but was intended to protect the mortgagee against impairment of the security afforded by the mortgage. The provision was to the effect that the mortgagors would not sell or remove from the premises any of the tangible personal property covered by the mortgage without the written consent of the mortgagee. When the fixtures were sold to Mrs. Stone, she assumed the mortgage and appellant's lien remained in force. Clearly there was no violation of this provision of the mortgage. The failure of appellant to allege that he was ready and willing to purchase the restaurant business under the terms stipulated in the contract of April 14, 1945, and would have exercised the option retained in the contract if the business had been offered to him by the administrator, authorized the judgment rendered by the chancellor. The refusal of the chancellor to permit the filing of the amended answer and cross-petition, which was tendered after he had announced judgment in favor of appellees, was not an abuse of sound discretion. The trial court has broad discretion in allowing amended pleadings to be filed, and except in rare instances its action in permitting or rejecting amendments will be approved. Section 134, Civil Code of Practice; Central Trust Co. of Owensboro v. Moffitt, 294 Ky. 103, 171 S. W. 2d 21; Howard v. Montgomery, 293 Ky. 291, 168 S. W. 2d 991; National Council of Knights and Ladies of Security v. Rowell, 276 Ky. 335, 123 S. W. 2d 1041; Christen v. Christen, 184 Ky. 822, 213 S. W. 189.

The judgment is sustainable on another ground. The provisions in the contract that "should the parties of the second part desire to discontinue the business and to sell it, the party of the first part is given the option first to repurchase the business and equipment herein sold for an amount of not more than the consideration herein recited" was not intended to apply where the purchaser dies and his heirs desire to continue the business. At most, they succeed to the rights and obligations of the purchaser. The provision upon which appellant relies is in the nature of a forfeiture, and forfeitures are regarded with disfavor by the law. An in-

terpretation which does not involve a forfeiture is favored, and where the intent is doubtful a provision for forfeiture will be strictly construed against him for whose benefit it is introduced. Case v. Stacy, 283 Ky. 808, 143 S. W. 2d 497; Roberts v. Babb, 282 Ky. 151, 137 S. W. 2d 1112; Hogg v. Forsythe, 198 Ky. 462, 248 S. W. 1008. ''A forfeiture will never be adjudged when upon equitable principles this would be unjust.'' Warfield Natural Gas Co. v. Ward, 244 Ky. 436, 51 S. W. 2d 256, 257. After Joe B. Stone's death intestate, one-half of his personal property belonged to his widow and one-half to his daughter. The restaurant business and the cash he had derived from its operation constituted practically all of his estate. If the property had been delivered in kind to his widow and daughter, the appellant could not have enforced his right to take possession of the restaurant business under the option provisions of the contract. The daughter was an infant and the administrator could not deliver the restaurant to her. For a consideration he did transfer it to the widow, who is also the guardian of her infant daughter. This is far removed from a sale to a stranger, and was not pursuant to a desire by the owners to discontinue the business and to sell it within the purport of the contract of April 14, 1945. Any other interpretation of the contract would work an injustice not intended by the contracting parties. The estate of the decedent, Joe B. Stone, was preserved by the chancellor's judgment, and appellant's rights under the contract of sale were fully protected.

The judgment is affirmed.